INTERNATIONAL & GREAT NORTHERN RAILWAY COMPANY V.
BRENDA C. VINSON ET AL.

Decided February 5, 1902.

**1.—Railway Company—Personal Injury—Freight Conductor—Violation of the Rules—Assumed Risk.**

Where a freight conductor, as soon as he observed that the train was being run backward too rapidly, went out on the steps of the caboose to signal the engineer, but did not do so because just then the speed was reduced considerably, though not to within the limit required by the rules, and very quickly thereafter the accident occurred, such facts did not show, as matter of law, that the conductor was guilty of contributory negligence or that he had assumed the risk.

**2.—Same—Failure to Signal Engineer—Charge.**

A requested charge that if the conductor could.have lowered the speed by a signal to the engineer, and failed to do so, there could be no recovery, was properly refused as requiring a finding for defendant if the conductor could have checked the train, though not sufficiently to have prevented the accident.

**3.—Same—Evidence—Opinion—Harmless Error.** ·

There was·no harm in permitting a brakeman who was on the train to testify that in his opinion the rate of speed and coming in contact with the steer caused the derailment of. the train, where such opinion was in accord with all the testimony in the case.

Appeal from Bexar.   Tried below before Hon. J. L. Camp..

*Denman, Franklin & McGown,* for appellant.

*W. W. King* and *Nat B. Jones,* for appellees.

JAMES, Chief Justice.—Appellee Brenda C. Vinson, the widow of Charles Vinson, recovered judgment for $10,000 damages on account of the death of her husband, a conductor on one of appellant's freight trains.

One ground for reversal is the contention that the testimony clearly established that his death was due to his contributory negligence, and that the danger which occasioned it was a risk he assumed.   It is not necessary to state the evidence further than to show, if possible, that these issues should have been submitted to the jury for decision.

The train was being backed down a hill or grade at night.   The rules of the company provided that a freight train shall not be run backwards at night at a speed exceeding eight miles an hour.   Also that a freight train shall be under the control of the conductor unless the conductor does something that is contrary to the rules, and then the engineer and conductor are held equally responsible.   The contention in substance is that the conductor, Vinson, on this occasion was permitting the train to move faster than eight miles an hour when it backed against a steer, which caused the caboose, upon the platform of which he stood, to be derailed and upset, and that he was thereby killed.

The following facts appeal in S. D. Cochran's testimony: "When the engineer gave the back signals we started back pretty lively.   Vinson was sitting at his desk in the caboose making up his reports.   He got up and said to me, 'I don't like this running so fast,' and as he started out the engineer applied the air and slowed up a little, and Vinson said, 'I will stand out here with my light, and you have your hand on the lever, so that if I give you a signal you put the air on in emergency,' and we went on a few minutes, but a very few minutes after that, and I applied the air once in a while to see if it was all right, and then the cars commenced increasing in speed until in my judgment they were running about fifteen miles an hour, when all of a sudden the caboose went up."   The witness went on to say that just as Vinson went out on the platform it slowed up a little—to about twelve miles an hour.   It was a very short time after it began to increase the rate of speed before the accident happened. · That after Vinson went out on the platform witness could see his light through the door and supposed that he was looking in the direction the train was going.   When he got up to go out on the platform he appeared to be all broke up on account of starting down the hill so fast.   After he got out on the platform it started up faster, so fast that it scared me.   Witness did not see Vinson give any signals to the engineer.   After he made the above remark about speed he walked directly to the door, opened it, and stood on the

rear platform of the caboose, but gave no signal that witness could see. He said to witness: "I am going to watch this track for stock, and if I see anything in the way I will give a signal and you put the air on in emergency." "When we first started out fast before the engineer first reduced his speed, I tried the air just a little to see whether it would take effect; I wanted to feel confident that it was all right. While I was applying it the engineer applied it and reduced the speed. After Mr. Vinson got out on the platform it was a very short time before we struck the steer; I could not tell how far we ran,—it must have been a hundred yards, maybe not that far."

The testimony of Armstead Scott, the engineer, evidenced the following facts: That the night was dark, and he could not say positively as to the exact rate the train was running. That he "just opened up enough to start the train and let it roll down, then increased to about fifteen miles an hour, and when about halfway from the start to where we stopped I reduced it to about ten miles, at which speed it ran until the accident happened." But he testified also: "When the caboose was cut out it ought to have put on the emergency brakes, and if I had not just released the brakes it would, but I released them just as the accident happened. I wanted to speed the train—thought we were going too slow. After the brakes were thrown off and the speed increased going down hill, I could not fill the air chamber because the accident happened about the time I released it and before the air chambers could be refilled."

It appears that it was about 11 o'clock at night, dark, and had been raining. The road was unfenced at this place.

These were the only witnesses to the circumstances of the occurrence. Their testimony will admit of inferences in favor of the verdict. According to the testimony of Cochran, deceased was quick to perceive the high rate of speed at which the train was running soon after it started down. He was alarmed and went out upon the platform, instructing Cochran to be ready at the lever to apply the brakes upon his signal. He went out for the purpose of taking action. According to Cochran, as soon as he was on the platform the engineer began reducing the speed, and according to the engineer it was reduced to about ten miles an hour. The night was dark, and if, as the engineer says, he could not be certain about the rate of speed for this reason, is Vinson to be held as a matter of law to have known the exact speed, or that it exceeded eight miles an hour? We think not. If, as the train was slowing, or had slowed to about ten miles an hour, the conductor could not under the circumstances, in the brief time that elapsed before the accident, with reasonable certainty have appreciated the fact that it exceeded the prescribed rate, his conduct would not have been a willful nor a negligent violation of the rule. Upon such view of the facts he could not be held to have assumed the risk of the excessive speed, nor would have been chargeable with contributory negligence. The jury could have found from the testimony before them that Vinson did not

signal the engineer when he went out to slow up because the engineer was then in the act of slowing; that it slowed down to about ten miles an hour, as the engineer says, and that he did not then signal, because he thought it was running at or about the prescribed rate, or did not know that it was running faster. And that he did not have time to do anything when the train was subsequently started at a greater speed, because the engineer testified that as soon as he again released the brakes and thus increased the speed the accident happened.

That the engineer was negligent in the way he handled the train under the circumstances may well have been found as the cause of Vinson's death, but the evidence was not such as would have warranted a withdrawal from the jury of the issues of contributory negligence or assumed risk. Therefore the court did not err in refusing to direct a verdict for the defendant as alleged in the first assignment, nor in overruling the motion for new trial, as alleged in the fourth.

The second assignment is that the court should have given the following requested charge: "The court instructs you that if you believe from the evidence that Charles Vinson, the deceased, knew the engineer was running the train in violation of the rules of the company, and at a dangerous rate of speed, and that he could have slacked the speed of said train prior to the accident by signal to the engineer, or by directing the brakeman to put on the brakes, and failed to give such signals, then the court instructs you to return a verdict for the defendant."

The evidence is that the accident occurred immediately or very soon after the engineer had released the brakes, and they could not have been effectively put on until the air chambers had been refilled. The engineer testified that after he had thrown the brakes off and the speed increased going down hill he could not fill the air, because the accident happened about the time he released it and before the chambers could be refilled. Cochran testified that if there had been a full pressure of air this train should have stopped very suddenly or in five or six car lengths after the caboose was derailed. It did not stop that quickly, but it ran about twenty-six or twenty-seven car lengths. The testimony amounts to this: That the train could not have been stopped after the brakes were thus released, but that its speed might have been checked to some extent had the conductor given signals. But it does not necessarily follow that it could have been sufficiently checked in that brief space of time to have prevented this accident. The charge requested would have entitled defendant to a verdict if it could have been checked at all on a signal, it matters not how little. To have been correct, in this respect, the charge should have required the jury to find the deceased could have, by signals, checked the speed and thereby prevented the accident. If he could not have done this, his failure to give the signals could not have been contributory negligence. The court gave a proper charge on that issue.

The special charge number 3 refused is squarely based upon the theory that the violation of the rule in respect to speed was negligence, and

that the dangers incident thereto were assumed risks. Besides, the same defect exists in this charge as in the one above discussed.

The fifth assignment is that the witness Cochran should not have been allowed to testify that in his opinion the rate of speed and coming in contact with the steer caused the derailment. As that opinion was in accord with all the testimony proved, no harm was done by admitting it.

*Affirmed.*

Writ of error refused.