PARIS & G. N. RY. CO. v. ATKINS.*
(No. 1581.)

(Court of Civil Appeals of Texas. Texarkana. March 16, 1916. Rehearing Denied April 13, 1916.)

1. CARRIERS ⟨key⟩280(5)—PASSENGERS—DEGREE OF CARE.

The degree of care required of common carriers of passengers is the same without reference to the character of the conveyance used; the test of liability in each instance is negligence, or the failure to exercise the degree of care exacted by law.

[Ed. Note.—For other cases, see Carriers, Cent. Dig. § 1098; Dec. Dig. ⟨key⟩280(5).]

2. CARRIERS ⟨key⟩321(8)—INJURY TO PASSENGER —INSTRUCTION.

In an action for personal injury while riding as a passenger in the caboose of defendant's freight train, an instruction that a passenger on an ordinary freight train assumes the risk of the dangers arising from the ordinary and careful operation of the train, but not those arising from the negligent operation of the train, was not affirmatively wrong.

[Ed. Note.—For other cases, see Carriers, Cent. Dig. § 1326; Dec. Dig. ⟨key⟩321(8).]

3. TRIAL ⟨key⟩256(1)—REQUEST FOR INSTRUCTIONS.

Where an instruction is lacking in fullness, the complaining party should request appropriate additional instructions.

[Ed. Note.—For other cases, see Trial, Cent. Dig. §§ 628, 633; Dec. Dig. ⟨key⟩256(1).]

4. CARRIERS ⟨key⟩321(8)—ACTION FOR INJURY— INSTRUCTION—NEGLIGENCE.

In an action for injury to a passenger riding in the caboose of a freight train, an instruction that if, after the train had arrived at a stopping place, the engine had been disconnect-

ed, and after some switching had been backed against the train and caboose so violently as to throw plaintiff from his seat and cause his alleged injury, and the negligence of defendant's employés was the proximate cause of the injury, plaintiff might recover, was proper, though not calling the jury's attention to the greater perils and discomfort, normally incident to even a careful handling of a freight train.

[Ed. Note.—For other cases, see Carriers, Cent. Dig. §§ 1247, 1326; Dec. Dig. ⊜⇒321(8).]

5. CARRIERS ⊜⇒280(5) — PASSENGERS — FREIGHT TRAIN—DEGREE OF CARE.

The test of due care toward a passenger riding in the caboose of a freight train is what prudent and cautious men would do under the same or similar circumstances, and not what railway employés usually or ordinarily do.

[Ed. Note.—For other cases, see Carriers, Cent. Dig. § 1098; Dec. Dig. ⊜⇒280(5).]

6. TRIAL ⊜⇒252(10)—INSTRUCTION—EVIDENCE TO SUPPORT—CONTRIBUTORY NEGLIGENCE.

In a passenger's action for personal injury, where the issue of contributory negligence was not raised by the evidence, there was no error in refusing a special charge thereon.

[Ed. Note.—For other cases, see Trial, Cent. Dig. § 602; Dec. Dig. ⊜⇒252(10).]

7. DAMAGES ⊜⇒132(2)—EXCESSIVE DAMAGES—PERSONAL INJURY.

A verdict of $2,000 for injury to a passenger, breaking several ribs from which he was suffering at the trial, and from which he might continue to suffer, and impairing his efficiency for any character of service, was not excessive.

[Ed. Note.—For other cases, see Damages, Cent. Dig. § 373; Dec. Dig. ⊜⇒132(2).]

Appeal from District Court, Lamar County; A. P. Dehoney, Judge.

Action by James W. Atkins against the Paris & Great Northern Railway Company. Judgment for plaintiff, and defendant appeals. Affirmed.

Wright & Patrick, of Paris, for appellant. Park, Moore & Hardison, of Paris, for appellee.

HODGES, J. This appeal is from a judgment for $2,000 in favor of the appellee for damages resulting from personal injuries. The evidence shows that in January, 1914, the appellee was a passenger riding in the caboose on one of the appellant's freight trains going to Paris, Tex., from some point in Oklahoma. When the train reached Arthur City, Tex., the engine and one or more of the cars were detached for the purpose of doing some local switching. While the caboose was standing on the main line, the engine and other cars were backed against it with such violence that the appellee was thrown against a desk and injured in the manner complained of.

The court gave the following as a part of his general charge:

"(2) It is the duty of a railroad company as a carrier of passengers to exercise a very high degree of care, or that degree of care which a very careful, cautious, and prudent person would exercise under the same or similar circumstances, in the handling and operating of its trains to avoid injury to its passengers.

"(4) A passenger on a freight train assumes the risk of such dangers as may arise from the ordinary and careful handling and operation of the train, but does not assume the risk and dangers arising from a negligent handling and operation of the train.

"(6) Now, if you believe from the evidence that on or about the 22d day of January, 1914, after defendant's train had arrived at Arthur City, and the engine had been disconnected from said train, leaving the train, including the caboose in which plaintiff was riding, standing, and after doing some switching the employés in charge of said engine and the cars they were engaged in switching and moving about the yards, ran said engine back into and against the train of which the caboose in which plaintiff was riding was a part, with such force and violence as to cause the plaintiff to be thrown from his seat and strike against the edge or corner of the desk inside the caboose, and that the plaintiff was thereby injured as alleged by him in his petition, and caused to suffer the physical pain and mental anguish and the other injurious consequences alleged in his petition, or any of them, and that the action of defendant's employés in so backing into said train and causing the said collision, if they did, was negligence, as that term is defined in the third paragraph of this charge, and that such negligence, if any, was the proximate cause of the accident and injuries to the plaintiff, then you will find for the plaintiff, unless you find for the defendant under other instructions hereinafter given you.

"(8) If you believe from the evidence that, at the time the plaintiff alleges he was injured, the defendant's employés were handling the engine and the cars attached thereto in a careful and in the usual and ordinary manner, and that in coupling onto said train there was only the usual and customary jar necessary to the performance of the work in a careful and prudent manner, you will find for the defendant."

To the first paragraph quoted above, numbered 2 in the court's charge, it is objected that it did not advise the jury that the degree of care to be exercised in the handling of mixed or freight trains must be such a degree of care as would be commonly exercised in the handling and management of such a conveyance, and does not make the court's meaning clear to the jury, or distinguish between the degree of care for freight trains and other trains.

To the fourth paragraph, second in the above quotation, it is objected that the charge did not advise the jury that a passenger on a mixed train assumes the increased danger from the difference in the character of conveyance, and from the ordinary coupling, jerking, or jolting incident to the handling of the same.

To the sixth paragraph the objections were made (1) that there was no evidence that the plaintiff was thrown from the seat; (2) that the evidence shows that the coupling made upon that occasion was one requiring considerable force and violence, and was necessary, and that the defendant would not be responsible for the injury resulting unless it was caused by an unusually violent contact of the cars; and (3) that the charge does not require the plaintiff to exercise care whatsoever to protect himself, and does not advise the jury that if he were guilty of negligence or assumed the risk of the injury he could not recover.

To the eighth paragraph the objection was made that it did not advise the jury that the usual and customary manner and jar referred to meant such as occurred in handling a train of the character then being used. These objections will be considered in the order stated above.

[1-4] The degree of care required of common carriers in the transportation of passengers is the same, without reference to the character of the conveyance used. The test of liability in every instance is negligence, or the failure to exercise that degree of care exacted by law. That the perils and discomfort normally incident to even a prudent and careful handling of a freight train are greater than those attending the use of trains especially equipped for carrying passengers is a matter of common knowledge and within the comprehension of the average juror. It was not, therefore, necessary that the attention of the jury should be called to that fact in order to make the charge complete. But in the fourth paragraph the court did point out this distinction as to the risks assumed by a passenger. This paragraph was not affirmatively wrong. If it was lacking in fullness, the appellant should have requested appropriate additional instructions. As to the sixth paragraph it is but fair to say that the evidence does show that the appellee was thrown a distance of several feet against a desk when the collision occurred. While the coupling may have been necessary, the evidence does not justify the inference that an impact of such violence was required. Three witnesses testified that this violence was unusual.

In support of its contention that the charge should have limited liability to unusual violence, appellant refers to the case of M., K. & T. Ry. Co. of Tex. v. Cobb, 128 S. W. 910. In that case the plaintiff was injured under circumstances somewhat similar to those attending the injury in this instance, and the court gave a charge in many respects strikingly similar to the one given in this case. This charge the court of civil appeals for the fifth district held to be error. The charge in that case told the jury to find for the plaintiff, if they believed that the car was backed suddenly and unexpectedly and with great force and violence, and that the plaintiff was thereby thrown forward and injured; and if they further found that the agents and servants in backing the car, if they did, were guilty of "negligence" as that term had been previously defined, unless they found for the defendant under other instructions given. In reversing the judgment on account of the giving of this charge the court said:

"The jury were authorized to find for the plaintiff if the car was backed suddenly and unexpectedly and with great force and violence against another car standing on the track, and plaintiff was thereby injured. We do not understand this to be the law. The car which was being switched, and in which the plaintiff was riding when injured may have been backed suddenly and unexpectedly and caused to strike a car standing on the track with great force and violence, and yet, if it did not strike the standing car with unusual force or was not unnecessarily switched against the standing car, no recovery could be had. The plaintiff's car may have been switched suddenly and unexpectedly and with great force and violence against another car, still the railway company would not be liable unless the force and violence with which it struck the standing car was unusual or unnecessary. The giving of this charge constitutes reversible error."

There are some features of that case which distinguish it from this, but we shall not undertake to discuss them. The similarity is such that what was there said might well be regarded as a precedent for reversing this case should we feel inclined to adopt the reasons there applied.

If the degree of care required of carriers in the transportation of passengers is the same, without reference to the character of the train used, and the test of liability in every instance is negligence, it is difficult to discover any error in either of the charges now being considered. We do not understand that the test of prudence is what railway employés usually or ordinarily do, but rather what prudent and cautious men would do under the same or similar circumstances. Railway operatives cannot fix the legal standard of care exacted for the protection of passengers by adopting as their usual or ordinary method of performing their duties one which unnecessarily endangers the safety of passengers. What may be a prudent method of handling a freight train on one occasion when carrying freight only, may be reckless conduct at another time when passengers are aboard.

We are not disposed to agree with the holding of the court in the case referred to. It seems to us that the provision in the charge condemned which required the jury, before rendering a verdict for the plaintiff, to find that the violent collision resulted from negligence, was overlooked. The charge here under consideration is, we think, a concise and admirable presentation of the material issues. There would have been no impropriety in telling the jury that they should take into consideration the character of the freight train and the difference between its equipment and that of a passenger train for safe handling; but the absence of such an instruction did not present a vital defect. Jurors, as men of average intelligence, are presumed to know that prudence and caution are mental processes not always to be determined by the mechanical consequences of an act. It requires no legal instruction for men of average intelligence to understand that freight trains are not equipped especially for the comfortable carriage of passengers, and that a high degree of care in their operation necessarily results in more violence and discomfort than usually attends the same prudent handling of passenger trains.

[5] Appellant presented several special

charges which were properly refused by the court. Each of these made ordinary care on the part of the employés in charge of the train the standard of prudence required.

[6] The issue of contributory negligence was not raised by the evidence, and there was no error in refusing the special charge on that subject.

[7] It was shown that several of the appellee's ribs were broken. According to his testimony he had not recovered his normal condition at the time of trial. He was then still suffering from his injuries. There was also evidence from which the jury might have concluded that he would not only continue to suffer in the future, but that his efficiency for any character of service would be impaired by the state of his health.

The judgment, we think, was amply supported by the evidence, and is not excessive. It is accordingly affirmed.