WARD et ux. v. CATHEY. (No. 8985.)

(Court of Civil Appeals of Texas. Ft. Worth. Feb. 15, 1919. Rehearing Denied March 22, 1919.)

1. APPEAL AND ERROR ⊗⇒1064(4)—HARMLESS ERROR—INSTRUCTIONS.

An instruction defining "ordinary care" as meaning exercise of that degree of care and prudence under given circumstances which a person of reasonable or ordinary "care" would exercise under same or similar circumstances, though not happily worded, *held* harmless.

2. APPEAL AND ERROR ⊗⇒1068(2)—HARMLESS ERROR—INSTRUCTIONS.

An instruction improperly defining "care" *held* not reversible error, where judgment was sustained by findings on other issues.

3. MUNICIPAL CORPORATIONS ⊗⇒705(4)—COLLISIONS WITH PEDESTRIANS—AUTOMOBILES—ORDINANCES.

Violation of city ordinance prohibiting an automobilist from passing a standing street car constituted negligence per se.

4. APPEAL AND ERROR ⊗⇒1064(4) — HARMLESS ERROR—INSTRUCTIONS.

Error in definition of "ordinary care" cannot constitute error of a prejudicial nature, unless charge necessarily entered into and confused jury in considering issue of contributory negligence.

5. MUNICIPAL CORPORATIONS ⊗⇒705(10) — COLLISIONS WITH PEDESTRIANS—CONTRIBUTORY NEGLIGENCE.

One stepping from a sidewalk to board a street car is not required to anticipate that an automobile would approach and attempt to pass the entrance into the street car in violation of a city ordinance.

6. MUNICIPAL CORPORATIONS ⊗⇒705(10)—COLLISIONS WITH PEDESTRIANS—CONTRIBUTORY NEGLIGENCE.

A pedestrian who left curb to enter street car was not negligent in turning from street car back in direction of curb, being terrorized by wrongful act of automobilist in passing a standing street car in violation of a city ordinance.

7. DEATH ⊗⇒99(5)—DAMAGES—AMOUNT.

In action by a woman 55 years of age for death of daughter earning $50 per month, a verdict of $8,000 cannot be said to be excessive where plaintiff depended upon daughter for support, and daughter was in all respects an admirable character of exemplary habits and constantly increasing in efficiency as a stenographer.

8. EVIDENCE ⊗⇒383(11)—LIFE EXPECTANCY—CONCLUSIVENESS.

The jury is not bound by general averages in life insurance tables in determining life expectancy.

9. DEATH ⊗⇒88—DAMAGES—ELEMENTS.

In action for death of daughter, jury in fixing damages may consider fact that in time of sickness of plaintiff deceased would, if alive, attend and care for her with tenderness.

10. DEATH ⊗⇒67—DAMAGES—EVIDENCE.

In action for death, court properly permitted proof that efficiency of deceased as a stenographer was increasing, and would probably increase in future, so that her earning capacity would be greater than at time of her death.

11. EVIDENCE ⊗⇒18 — JUDICIAL NOTICE — HIGH COST OF LIVING.

In considering a question of excessiveness of verdict for personal injuries, court may take judicial knowledge of fact that wages have increased, and that purchasing value of a dollar has been decreased many times.

Appeal from District Court, Tarrant County; Ben M. Terrell, Judge.

Suit by Mrs. G. A. Cathey against W. B. Ward, Jr., and wife. From judgment for plaintiff, defendants appeal. Affirmed.

Thompson, Barwise, Wharton & Hiner and Lattimore, Bouldin & Lattimore, all of Ft. Worth, for appellants.

R. L. Carlock and Massingill & McDonald, all of Ft. Worth, for appellee.

CONNER, C. J. This suit was instituted by the appellee, Mrs. G. A. Cathey, against W. B. Ward, Jr., and his wife for damages for causing the death of Leona Cathey, daughter of Mrs. G. A. Cathey, who was run over and killed on a public street in the city of Ft. Worth by an automobile driven at the time by Mrs. W. B. Ward, Jr.

It was alleged, in substance, that the deceased daughter, Leona Cathey, was approaching a street car for the purpose of taking passage thereon, and that while walking from the sidewalk or curb near the intersection of Ninth and Main streets that Mrs. Ward approached and attempted to pass said street car, which had stopped for the purpose of taking on passengers; that she was driving at an excessive rate of speed without giving any warning of her approach, and that in these particulars she was negligent; that in so attempting to pass the street car she violated an ordinance of the city of Ft. Worth which prohibited persons from driving an automobile past a street car which had stopped for the purpose of taking on or letting off passengers. It was also alleged that Mrs. Ward was negligent in failing to keep a proper lookout to discover persons on the street and near the street car.

The case was submitted to a jury on special issues, and upon the jury verdict the court rendered a judgment in favor of the plaintiff, Mrs. Cathey, against W. B. Ward, Jr., and wife in the sum of $8,000 and they have appealed from the judgment so rendered.

The following are the issues that were sub-

mitted together with the answers of the jury thereto:

"Issue No. 1: Was it or not the purpose and intention of the deceased, Leona Cathey, just before the accident occurred, to take passage on board a street car near the corner of Ninth and Main streets? Answer 'Yes' or 'No.'

"Answer: Yes.

"Issue No. 2: Was the Polytechnic street car testified about by the witnesses stopped for the purpose of taking on or letting off passengers at the usual stopping place near Ninth and Main streets before the time that the automobile passed the rear entrance of said street car? Answer 'Yes' or 'No.'

"Answer: Yes.

"Issue No. 3: If you answer 'No' to the last preceding issue, then you need not answer this issue. But, if you answer 'Yes,' then state whether or not the defendants' automobile stopped before passing the rear entrance of said street car where passengers ordinarily enter and leave the car. Answer 'Yes' or 'No.'

"Answer: No.

"Issue No. 4: If you answer 'No' to the last preceding issue, then state whether or not such failure on the part of the driver of said automobile to stop the said automobile before passing the said rear entrance of said street car where passengers ordinarily get on or off, if such be your finding, constituted a violation of the city ordinance read in evidence, which prohibits any automobile from passing any street car going in the same direction stopped for the purpose of taking on or letting off passengers. Answer 'Yes' or 'No.'

"Answer: Yes.

"Issue No. 5: If you answer 'Yes' to the preceding issue, then state whether the violation of such ordinance, if you have found that the defendants did violate the same, proximately contributed to cause or bring about the accident to the deceased. Answer 'Yes' or 'No.'

"Answer: Yes.

"Issue No. 6: State whether or not the driver of the said automobile was negligent in the way and manner that she approached and attempted to pass the said street car just prior to the happening of said accident. Answer 'Yes' or 'No.'

"Answer: Yes.

"Issue No. 7: If you answer 'Yes' to the last issue, then state whether such negligence, if any you find, proximately caused the happening of the said accident to the deceased, Leona Cathey. Answer 'Yes' or 'No.'

"Answer: Yes.

"Issue No. 8: Did the driver of the said automobile at the time of and just prior to the happening of said accident give any warning to the deceased, by sounding the horn or otherwise, of her intention to pass the said street car? Answer 'Yes' or 'No.'

"Answer: No.

"Issue No. 9: If you answer 'No' to the last preceding issue, then state whether it was negligence on the part of such driver not to do so, if you have found that she did not do so. Answer 'Yes' or 'No.'

"Answer: Yes.

"Issue No. 10: You will also state whether such failure, if any, to give such warning, proximately contributed to cause the death of the said Leona Cathey. Answer 'Yes' or 'No.'

"Answer: Yes.

"Issue No. 11: Did the driver of the said automobile, in approaching the place where the deceased was struck and run over by said automobile, keep such a lookout ahead to avoid running upon or injuring the deceased as a person of ordinary care would have done under the same or similar circumstances? Answer 'Yes' or 'No.'

"Answer: No.

"Issue No. 12: If your answer to the last preceding issue should be 'No,' then state whether such failure, if any you find, to keep said lookout ahead, proximately contributed to cause the production of the said accident. Answer 'Yes' or 'No.'.

"Answer: Yes.

"Issue No. 13: Did the driver of said automobile fail to use ordinary care with regard to the speed of said automobile in operating same along Main street at and just prior to the happening of said accident? Answer 'Yes' or 'No.'

"Answer: Yes.

"Issue No. 14: If your answer to the last preceding issue be 'Yes,' then state if such act or conduct on the part of the said driver proximately contributed to cause the death of the said Leona Cathey. Answer 'Yes' or 'No.'

"Answer: Yes.

"Issue No. 15: Just prior to the accident did Miss Cathey leave the sidewalk or some point near the sidewalk and walk in a direction towards the street car? Answer 'Yes' or 'No.'

"Answer: Yes.

"Issue No. 16: If you answer 'Yes' to the last preceding issue, then state whether or not there was anything to obstruct her view of the approaching automobile if she had looked for the approach of the same. Answer 'Yes' or 'No.'

"Answer: No.

"Issue No. 17: If you find that she did walk from a point near the sidewalk towards the street car, and if you find that while doing so, and prior to the accident, by looking for the approach of said automobile, she could have seen it in time to have avoided the accident, say whether or not a reasonably prudent person, in the exercise of ordinary care, would have looked for the approach of an automobile under the same or similar circumstances. Answer 'Yes' or 'No.'

"Answer: No.

"Issue No. 18: State whether or not the accident to Miss Cathey was caused by reason of her turning from the point where she was standing as the automobile approached and moving towards it, or in such direction as caused the left fender of the car to strike her. Answer 'Yes' or 'No.'

"Answer: No.

"Issue No. 19: If you answer the above issue in the affirmative, state whether or not a person of reasonable care and prudence, under all the surrounding circumstances, would have seen the approach of said car in time to have avoided the accident. Answer 'Yes' or 'No.'

"Answer: No.

"Issue No. 20: State from the evidence the amount of damages sustained, if any, by the plaintiff on account of the death of her daugh-

ter, Leona Cathey. In ascertaining the amount of damages, if any, you will say what amount of money, paid now, will in your judgment reasonably and fairly compensate the plaintiff for the loss of such pecuniary benefits, if any, as you may believe from the evidence plaintiff had a reasonable expectation of receiving from her daughter had she not been killed on the occasion of said accident; and in determining such pecuniary loss, if any, you have a right to take into consideration the age and accomplishments of Leona Cathey, and also to consider the probabilities as to how long she would have contributed to the support of the plaintiff, and whether or not the same would have increased or diminished from time to time in the future; but in estimating the damages herein, if any you find, you will exclude from your consideration any allowance for grief or sorrow endured by the plaintiff or for the loss of the daughter's companionship or society or by way of solace.

"Answer: $8,000."

[1, 2] Together with the issues the court submitted several general instructions with appropriate application, among which was a definition of "ordinary care" in the following words:

" 'Ordinary care,' as that term is used in this charge, means the exercise of that degree of care and prudence under given circumstances which a person of reasonable or ordinary care would exercise under the same or similar circumstances."

It is insisted that the charge was misleading and confusing, but, while the charge perhaps is not happily worded, we conclude that it does not constitute reversible error. If the word "care" in the charge, made applicable to the person called upon to exercise care, be substituted by the word "prudence," the charge as a whole would be in an approved form. Mr. Webster, in his definition of the word "care," gives, as among its synonyms, the word "prudence," and we think it quite improbable that the jury gave to the word "care," as used in the charge relating to the person, any other meaning.

Moreover, there is but one issue in the case to which, if erroneous, the charge could have effective relation. It was shown without objection that the city of Ft. Worth had duly enacted and promulgated an ordinance which prohibited persons from driving an automobile past the rear entrance of a street car stopped for the purpose of taking on or letting off passengers. The jury found in answer to special issue four, as may be seen by reference thereto, that this ordinance of the city was violated by Mrs. Ward, and that such violation was a proximate cause of Leona Cathey's death. These findings are not attacked by any of appellant's assignments of error, and it follows, therefore, that the findings relating to this issue alone are sufficient to sustain the judgment.

[3-5] All other findings of negligence on the part of Mrs. Ward consequently become immaterial, for the violation of the ordinance constituted, as has been often decided, negligence per se, and the court might have so charged the jury. Error in the definition of ordinary care therefore cannot constitute error of a prejudicial nature, unless, as appellants insist under other assignments of error, it must be said that the charge necessarily entered into, and confused the jury in considering, the issue of contributory negligence, but the jury not only found that Leona Cathey was not guilty of contributory negligence, but we think, after its consideration, the evidence failed to even legally raise the issue. It is true there was evidence tending to show that the street was unobstructed, and had Leona Cathey looked up the street, she might have seen the approaching automobile, but, as the evidence indicates, the automobile approached without warning of any kind, and she was close to the side of the street car, apparently endeavoring to extract car fare from her hand bag, and there were also ten or more people in the crowd. She was not required to anticipate, as held in some of the railway crossing cases, that an automobile would approach and attempt to pass the entrance into the street car in violation of the city ordinance. It is said in Shearman & Redfield on Negligence (5th Ed.) vol. 1, § 92:

"As there is a natural presumption that every one will act with due care, it cannot be imputed to the plaintiff as negligence that he did not anticipate culpable negligence on the part of the defendant. He has a right to assume that every one else will obey the law, including not only the common law, but also any statutes or city ordinance, and to act upon that belief."

To the same effect is the rule stated in 29 Cyc. 516. See, also, Railway Co. v. Gray, 65 Tex. 32; Railway Co. v. Shieder, 26 S. W. 512.

[6] It is also true that there was evidence tending to show that immediately prior to the moment when the automobile struck Leona Cathey she turned from the street car back in the direction of the curb; the driver of the automobile thus accounting for the collision. If Leona Cathey did, in fact, turn back and come in contact with the automobile, as insisted, it was evidently inadvertently or induced by the sudden peril presented by the moving automobile, and, as said in the case of T. & P. Ry. Co. v. Watkins, 88 Tex. 20, 29 S. W. 232:

"Where one by his own wrongful act has so terrorized another that such other is thereby impelled to do an act resulting in his injury, the wrongdoer cannot shield himself from liability by showing that the person so terrorized did not act as a reasonably prudent person would have acted under similar circumstances."

See, also, Railway Co. v. Neff, 87 Tex. 303, 28 S. W. 283; Thompson on Negligence, § 1616.

We accordingly hold that appellants' first assignment of error must be overruled.

What we have said in disposing of the first assignment of error, we think, sufficiently disposes of most of the contentions, but it may not be inappropriate to say that, if it be assumed that the issue of contributory negligence on the part of Leona Cathey was raised by the evidence, nevertheless we find no prejudicial error in the court's charge defining the burden that rested upon the defendants to prove such negligence. The charge distinctly instructed the jury that it would "look to all the facts and circumstances in evidence" in determining the issue. The jury therefore were not restricted to the evidence offered by either party.

There are a number of other objections to the court's charge and to the issues submitted, but, inasmuch as the questions propounded relate to issues of negligence other than that imputed by the violation of the city ordinance, we think we need not discuss them; for, while we have considered them and find no error therein, in no event are they material, relating, as they do, to issues and findings that might be wholly disregarded without disturbing the judgment.

[7] The concluding assignments should perhaps be noticed with more particularity. It is urged that the finding of the jury for damages in the sum of $8,000 "was grossly excessive and unsupported by the evidence." The evidence is to the effect that the plaintiff at the time of the accident was a woman 54 or 55 years of age, whose life expectancy, as computed by insurance tables, did not exceed 16 or 17 years; that Leona Cathey was single at the time, and only earning a salary of $40 to $50 per month. There was evidence, however, to the effect that the plaintiff was almost, if not entirely, dependent upon her daughter for support, and also for the payment of remaining debts due upon a homestead purchased; that Leona Cathey was in all respects an admirable character, of exemplary habits, and constantly increasing in efficiency as a stenographer, and we find no argument or circumstance in the record indicating that the jury were actuated in coming to their verdict by any improper motive. There is no mathematical standard by which we can measure damages for injuries such as shown in this case. As stated by us in the case of Burnett v. Anderson, 207 S. W. 540:

"The law merely declares that such damages shall be limited to just compensation, and the determination of that question is committed to the jury in a very large measure."

It was further said in the case of H. & T. C. Ry. Co. v. McNamara, 59 Tex. 255, that:

"It is only when the damages are palpably and manifestly excessive that the verdict will be set aside by the appellate court. A large amount of discretion is necessarily left to the jury in all such cases, and the court will not reverse even if the damages allowed are much greater than the court would have given under the proof."

[8] See, also, H. & G. N. Ry. Co. v. Randall, 50 Tex. 254; Lumber Co. v. Denham, 29 S. W. 554; C., R. I. & T. Ry. Co. v. Jones, 39 Tex. Civ. App. 480, 88 S. W. 445; C., R. I. & T. Ry. Co. v. Swann, 60 Tex. Civ. App. 427, 127 S. W. 1164; Railway Co. v. Pigott, 54 Tex. Civ. App. 367, 116 S. W. 841, writ of error refused. In the case last cited it was held, upon reasoning of which we approve, that the jury were not bound by the general averages in life insurance tables in determining a life expectancy of the plaintiff. On this subject it is said:

"One's life expectancy is estimated from the general average of the lives of a great number of persons; but the principle of 'general average' should only be applied to cases which are neither known, nor can be presumed, to be other than average cases. Therefore such averages are commonly of little use for the particular guidance of any affairs but those which concern large numbers. Hence tables of the chances of life are useful to insurance companies, but they go a very little way toward informing any one of the chances of his own life, or any other life in which he is interested, since almost every life is either better or worse than the average."

[9, 10] The jury therefore may have concluded in this case that the plaintiff had a longer life expectancy in her favor than is contended for by the defendant. The proof further showed that the deceased daughter was exceptionally attentive and devoted to her mother, and, when not actually occupied with her office work, spent her days and nights at home helping with the housework, etc. From all which it may be inferred that in time of sickness she would have attended her mother and cared for her with tenderness, and these services, while difficult of appraisement, possess a value that the jury had a right to take into consideration. As said by the Supreme Court in Railway Co. v. Lehmberg, 75 Tex. 61, 12 S. W. 838:

"Every parent and husband has, for his wife and children, a pecuniary value beyond the amount of his earnings by his labor or vocation."

The converse may also be fairly said to be true. There was evidence also on the part of an employer whose evidence was objected to, but which we think was admissible, and which may even have been inferred (see Railway Co. v. Pigott, supra), that the efficiency of Leona Cathey as a stenographer was increasing, and would probably increase in the future, so that her earning capacity would be greater, perhaps much greater, than it was at the time of her death.

[11] It is true that some of the early cases cited by appellants would tend to show that the verdict in this case was excessive,

but the verdict here was rendered in 1918, and we cannot ignore the fact, of which we may take judicial knowledge, because of its uniform and general existence, that wages have increased, and that the purchasing price of a dollar to-day has been decreased many times from what it was 10 or more years ago, so that on the whole we feel unwilling to say that the verdict in the case before us is excessive.

We think what has been said sufficiently disposes of all the assignments of error, and accordingly they are all overruled, and the judgment affirmed.