YOES v. TEXAS & P. RY. CO.　(No. 2091.)

(Court of Civil Appeals of Texas. Texarkana. March 6, 1919. Rehearing Denied April 3, 1919.)

1. APPEAL AND ERROR ⇐1068(2)—ERRONEOUS INSTRUCTION—HARMLESS ERROR.

Though jury was probably misled by an erroneous instruction with reference to the degree of care required of defendant railroad in the operation of train on which plaintiff, accompanying a shipment of hogs, was riding, judgment will not be reversed, in view of jury finding that plaintiff was guilty of contributory negligence.

2. CARRIERS ⇐280(8) — INJURY TO PERSON ACCOMPANYING SHIPMENT OF STOCK — DEGREE OF CARE.

In action for injuries sustained while riding in a caboose accompanying a shipment of hogs, as stipulated by the terms of his contract, negligence as applied to a passenger was the rule that should have been submitted to the jury.

3. CARRIERS ⇐347(6) — INJURY TO PERSON ACCOMPANYING SHIPMENT OF LIVE STOCK—CONTRIBUTORY NEGLIGENCE—QUESTION FOR JURY.

In action for injuries sustained while riding in a caboose accompanying a shipment of hogs, as stipulated by the terms of his contract, question of contributory negligence *held* for the jury.

Appeal from District Court, Van Zandt County; Joel R. Bond, Judge.

Action by W. F. Yoes against the Texas & Pacific Railway Company. Judgment for defendant, and plaintiff appeals. Affirmed.

The appellant claims that while a passenger in the caboose of one of appellee's freight trains he was suddenly thrown to the floor of the car, and thereby sustained personal injury through negligent operation of the train. The negligence alleged in the petition is that the engine and cars were backed against the caboose with great force and violence. The defendant pleaded denial, contributory negligence in using a chair in the car not provided or intended for passengers, the want of any injury, and that the existing ailment plaintiff is suffering from is rheumatism of long standing. The case was submitted to the jury on special issues, and they made findings as follows: (1) That there was no negligence on the part of the defendant proximately causing any injury to the plaintiff; (2) that the plaintiff's injuries were not caused by any negligence on the part of the defendant; (3) that the plaintiff did not exercise ordinary care for his own safety under the circumstances of the situation; (4) that plaintiff was guilty of contributory negligence; (5) that the plaintiff suffered from rheumatism prior to and at the time of the alleged injury; (6) that the ailment was not made worse by any negli-

gent act of the defendant; and (7) that nothing should be paid the plaintiff as compensation. On this verdict of the jury the court entered judgment for the defendant.

The plaintiff shipped a carload of hogs to Ft. Worth, and was accompanying the shipment as stipulated by the terms of the shipping contract. He was riding in the caboose of the freight train. There were cushioned seats, or bunks, on each side of the caboose, securely fastened to the side walls, which were provided for the use of such passengers and employés; and there were also in the caboose a chair, a small desk fastened to the wall, and a lamp above the desk, for the use of the conductor in the performance of certain of his duties. The train, which was a long one, stopped in the switchyards of East Dallas; and a part of the train was then detached for switching purposes, leaving the rear part of the train and the caboose standing where they stopped. After switching, and preparatory to continuing the trip, the engine and cars were backed against that part of the train and caboose standing on the track. The backing of the train against the caboose caused the appellant, as he says, to be thrown to the floor of the car. The appellant thus describes the accident:

"While the train was standing there I was in the caboose and was sitting at the desk reading. There was only one lamp in the car, and I took up a paper and was sitting there reading that paper. All at once there was a slam against the caboose. I do not know what struck it, but something struck it; and it seems to me that the floor must have jumped that high (indicating three or four feet), throwing me over sideways in the car across the floor, and I fell with my hip and shoulders and head against the floor. The lamp, in a little steel holder on the desk, jumped out and hit me on the leg, then rolled over me. The lamp did not go out, but turned bottom side up, and the first thing I did was to straighten it up. The globe was busted all to pieces. There was no employés of the train in the caboose at the time, and I don't remember whether any one came in just after that or not. I know that in a moving freight train there is considerable jerking at the tail end of the train, but I never saw anything bump like that. I was not looking for it in particular. I had my mind on my reading somewhat. Cars were continually passing, and I noticed them, but, then, I was not exjecting any unusual or severe jar. I was not expecting the caboose to be hit so hard. I know they were going to move out, but I was not thinking about it in particular. If I had heard the knocks of the cars coming together, I don't think I would have gotten out of the chair; I would not have braced myself in the chair; I was not expecting it to be knocked over. I have been on several cabooses, but this the first time I ever saw a chair knocked over. I don't know whether the chair would have been knocked over if I had not been on it. I could not say whether it was my fault; I turned the chair over. We all fell in a pile— me and the chair. I did not examine the chair to see if it was broken. At the time I sat down there I knew that chair was provided for the conductor. I knew they were switching all around. I knew the train was going—that is, if I had stopped to think—and I knew that when they were coupling there were frequently hard jars. I don't think the bunks would have turned over if I had been sitting on them."

And the witness Campbell, in the cattle car at the time tying a rope on a bull, testified that the engine and cars were backed against the car and caboose with force enough to unbalance him. The witness Daugherty testified:

"I don't know of any rough handling of the train at Dallas—nothing except what Mr. Yoes told me; nothing unusual occurred to the train to my knowledge—I saw that the lamp chimney had been broken, but don't know how it was done. I have never known of the lamp chimney falling out. It would take a good jar to throw the lamp out. If the jar was sufficient to throw the lamp out, it was a good one. The bunks are for employés to sleep on and for passengers to ride on. The chair sits there, and there is nothing to prevent any one from sitting on it; I never notified Mr. Yoes that it was private property."

The evidence is conflicting respecting the appellant's injuries. There is evidence to support the jury—findings of want of any injury to appellant by his fall to the floor, and of contributory negligence.

Wynne, Wynne & Gilmore, of Wills Point, for appellant.

J. A. Germany, of Wichita Falls, for appellee.

LEVY, J. (after stating the facts as above). [1-3] The appellant insists that the finding of the jury that the railway company was not guilty of negligence was contrary to the evidence, and was caused by an erroneous instruction as to the degree of care required of the railway company to avoid injury to him, a passenger. Negligence, as applied to a passenger, is the rule that should have been submitted to the jury. Railway Co. v. Atkins, 185 S. W. 306. And we think that the jurors, in reaching an answer to the above special issue, were probably misled by the instruction as given by the court respecting the care to be used in the operation of the train. But it is believed that the giving of the instruction on negligence as complained of would not warrant a reversal of the judgment. For, conceding that the jury may, under proper instruction, have made a finding of fact that the company was guilty of negligence, the court nevertheless could not, in view of other special findings, have rendered judgment for the appellant. The jury found as a fact (1) that the injury complained of by the appellant was not caused by any negligence on the part of the railway company; and (2) that the appellant was himself guilty of contributory negligence

which caused the injury. The evidence was conflicting respecting contributory negligence and the degree of care the appellant was to exercise for his own safety were correct statements of the law, and are not complained of on appeal. The jury answered "No" to the question, Did the plaintiff exercise ordinary care for his own safety under the circumstances of the situation?" and answered "Yes" to the question, "Was the plaintiff guilty of contributory negligence which caused his injury, if any?" And there is ample evidence in this case to make an issue of fact for the jury to decide as to whether or not the appellant was guilty of contributory negligence. It appears that the seats provided for passengers were cushioned bunks, securely fastened to the wall. The chair in which the appellant was sitting was provided exclusively for the use of the conductor. The jars, or unusual jars, of the freight train would not upset the bunks as this jar upset the chair and caused appellant to be thrown to the floor of the caboose. Appellant says:

"I knew they were switching all around. I knew the train was going—that is, if I had stopped to think—and I knew that 'when they were coupling there were frequently bad jars. I don't think the bunks would have turned over if I had been sitting on them."

And appellant does not claim that he was impliedly invited to use the chair· at the time, for he says, "I knew that chair was provided for the conductor." So the testimony in this case was not contradicted that the railway company came up to the standard of duty required by law in providing the securely fastened bunks or seats for passengers, and that the appellant voluntarily chose to occupy a movable chair not provided for him to use and at a time when none of the employés had notice that he was in the chair. And it appears that appellant was aware that switching was then being done. In occupying the chair the appellant reasonably knew that it could not be used in comparative freedom from being overturned through sudden jerks and the like of the train when moved. The simple fact of occupying the chair would not of itself be an act of imprudence necessarily; but in view of the nature of the train, in connection with the place appellant was occupying, it may have been an imprudent act subjecting him to an injury that might have been avoided had he occupied the seat provided for him by the company. Therefore it became a question of fact to be determined by the jury, after considering all the circumstances in evidence relating to the situation as to whether or not appellant was guilty of contributory negligence. As said in Railway Co. v. Morgan, 44 Tex. Civ. App. 155, 98 S. W. 40S:

"We do not think the simple fact that a position in the cupola of a car would be more dangerous than one on the floor of such car would, of itself, render the act of appellee in taking the former position contributory negligence as matter of law; but it would be 'a question of fact to be determined by the jury, after considering all of the circumstances relating to such act."

The court cannot say, as a matter of law, that there was no contributory negligence in this case; and the assignments so complaining are overruled.

In view of the finding of the jury of contributory negligence, the court, it is concluded, correctly entered judgment for the defendant, and we think the judgment should be affirmed.