## DILLINGHAM v. CURRIE et al.

### No. 4546.

Court of Civil Appeals of Texas. Amarillo.
March 2, 1936.

Rehearing Denied April 13, 1936.

Cox & Hayden, of Abilene, for appellant.

W. Marcus Weatherred, of Coleman, for appellees.

MARTIN, Justice.

Appellee sued and recovered judgment against appellant for alleged physical injuries to his wife and for doctor and hospital bills, occasioned by a collision between two motor vehicles, one driven by the agent

of appellant and the other by Mrs. Currie, wife of appellee.

Mrs. Currie was driving her automobile south on Concho street in the city of Coleman. The appellant's truck was coming north on the same street. At the intersection of Elm and Concho streets appellant's truck suddenly turned to its left, striking the Currie car. Respecting the details ·of the accident, Arnold, the driver of appellant's truck, testified in part:

"Q. Were you watching the traffic from behind as you approached that intersection, through the mirror? A. Yes sir.

"Q. Did that obstruct your view from the front? A. Just before I got there to make the·turn a car honked behind me and I looked through the mirror to see whether or not it was going to try to pass me before I made the turn.

"Q. Did you slow down then? A. There wasn't any reason to slow down at all.

"Q. About how fast were you going? A. Between twelve and fifteen miles an hour. * * *

"Q. Did you then look up the street ·to see if there was anybody coming before making the turn? A. Yes, after I turned I looked forward.

"Q. What did you see, if anything? A. I seen a car coming. * .* *

"Q. Where was this car—close or off quite a distance? A. Well, it was pretty close to me.

"Q. Well then describe, as nearly as you can, the collision and how it happened. A. Well, we just—as I made the turn I seen— I looked forward and seen the car and seen what was going to happen and I applied the brakes to stop but we were so close together that the cars struck. * * *

"Q. After you applied the brakes do you know about how long before you came to a stop? A. Just a little bit.

"Q. About how many feet? A. Twelve or fifteen feet; maybe ten or twelve; never measured the distance. * * *

"Q. You saw Mrs. Currie's car? A. Yes.

"Q. And knew that there was a car coming south on Concho Street, didn't you? A. Yes.

"Q. You knew that it was going right on south? A. Yes.

"Q. And you knew that you were going to turn? A. Yes sir.

"Q. And yet, you were looking in the rear mirror and looking behind you, weren't you? A. Yes, I looked through the mirror.

"Q. When you are looking in the rear view mirror you won't see anything except what you are looking at through the rear view mirror, will you? A. No sir.

"Q. Didn't you say right there at the time of this occurrence that you were looking in the rear view mirror and didn't see this car? A. Yes.

"Q. That was true wasn't it? That if you hadn't been looking in the rear view mirror that you could have seen the car? A. I suppose I could. * * *

"Q. There was nothing at all to obstruct your view north on Concho Street? A. No sir.

"Q. Just a wide open, traveled highway and yet you say you didn't see Mrs. Currie's car until you were within a few feet of it after you turned to the left? That is correct? A. Yes. * * *

"Q. Mr. Arnold, you did see Mrs. Currie's car before you made the turn. That is correct, is it not? A. As I started to turn I seen her car coming.

"Q. Was that before you made the turn? A. After I started to make the turn I looked around; the car behind me had honked and I had my hand out and I looked through the mirror to see whether or not he was going to try to pass before I turned and as I looked back I pulled the steering wheel to make the turn; when I pulled the steering wheel to make the turn and looked she was right in front of me. * * *

"Q. Why didn't you turn your steering wheel to the·right after you saw Mrs. Currie's car? A. I don't know. I guess I was so close I couldn't; I was excited just about as bad as she was."

▆▆ Appellee properly pleaded, and the trial court submitted, the negligence of appellant in failing to keep a proper lookout, with appropriate corollary issues. These were all answered favorably to appellee. No objections appear here to these. That a finding of negligence upon this issue was justified, if not required, by the testimony quoted above of appellant's own witness, is, we think, plainly evident. If not, that of appellee fully supported the jury finding of negligence upon such issue. Many other grounds of negligence were alleged, proven, submitted, and answered favorably. Much of appellant's brief is taken up with a discussion of alleged errors

in the submission of some of these. All these contentions are fully answered by the following well-settled rule: "Since the judgment finds support on one ground of negligence, the error of the court in improperly submitting another ground of negligence alleged was harmless. Thornton v. Moody (Tex.Civ.App.) 24 S.W. 331 (error refused); Northwestern Nat. Life Ins. Co. v. Blasingame et al., 38 Tex.Civ.App. 402, 85 S.W. 819 (error refused); Ward et ux. v. Cathey (Tex.Civ.App.) 210 S.W. 289 (error refused); Yoes v. T. & P. Ry. Co. (Tex.Civ.App.) 211 S.W. 311; Eastern Texas Elec. Co. v. Hunsucker (Tex.Civ. App.) 230 S.W. 817, 819." West Texas Coaches, Inc., v. Madi, et al. (Tex.Com. App.) 26 S.W.(2d) 199, 202.

■ Appellant pleaded in part as contributory negligence: "That she was negligent in failing to stop * * * at said intersection or turn to the right on Elm Street and thereby avoid the collision. * * *"

The trial court attempted to submit this issue and appellant contends erroneously. We reproduce here literally the point attempted to be made:

"The court submitted special issue No. 35, as follows:

" 'Do you find from a preponderance of the evidence, from all the facts and circumstances in this case, that an ordinarily prudent person, in the exercise of ordinary care in the position Mrs. Itasca Currie was in, would have turned west on Elm Street? Answer Yes or No. Answer: No.'

"Appellant excepted to said special issue No. 35 because said issue as framed is a general issue and not an issue of fact to be submitted to the jury and was therefore misleading and confusing to the jury."

The necessary effect, it seems to us, of the defense submitted, is that an automobile driver, on seeing a truck approaching down the street ahead of him, must run for his life up a side street, or be charged with negligence if he happens to get killed or hurt by the truck. The error was against appellee, not appellant. Mrs. Currie was on her side of the street when struck. She had a legal right there. The mere approach of a truck from the opposite direction and on its own side of the street called for no action on her part, and any implied suggestion from the court that she might have been negligent in not turning down a side street could not harm appellant even if it were a general charge.

Appellant requested, and the court refused to submit, the following special requested issue: "Do you find from a preponderance of the evidence that at the time of and immediately prior to the collision complained of that Mrs. Itasca Currie was sick and highly nervous and that same was known to the plaintiff and to Mrs. Itasca Currie? Answer Yes or No."

This was followed by requested issues inquiring if such was negligence and the contributing proximate cause of the collision. A witness testified: "She said she had been sick and was awfully nervous, but she wasn't hurt."

■■ In our opinion, there is no evidence which tended to raise the issue that her sickness or nervousness was a contributing proximate cause of the collision. If so, what act of hers at the time of or immediately prior to the accident indicates that such condition influenced her conduct? None are suggested that are not fully covered by the court's instructions and answered favorably to her. The court submitted and the jury found that (a) she was not driving at a speed in excess of 20 miles per hour; (b) that she did not fail to keep a proper lookout for appellant's truck; (c) that she was not driving her car at a dangerous rate of speed; (d) that she did not see defendant's truck in time to have turned her car west on Concho Street; (e) that an ordinarily prudent person would not have stopped his car at the intersection of Elm and Concho streets; and (f) would not have turned west on Elm. This was all and more than appellant was entitled to. A mere bodily condition alone could not constitute negligence. Proximate cause is an indispensable element of the defense of contributory negligence. Foster v. Beckman (Tex.Civ.App.) 85 S.W.(2d) 789 (writ ref.). Manifestly there must be a causal connection between such negligence and the alleged accident. It seems here that every alleged act of Mrs. Currie which might have been a contributing cause, as well also as some that were fanciful, were submitted and found unfavorably to appellant.

■ Nor do we think the trial court erred in referring in his charge to the "collision" between the truck and automobile. It was proven conclusively by witnesses for both sides that such a collision occurred. A reference to an undisputed fact is not on the "weight of the evidence," nor calculated to mislead or prejudice the jury.

In defining "proximate cause," the trial court used the phrase "concurring cause." Its failure to define the latter term is assigned as error. The practice of defining a definition tends usually to confuse the jury and to make a mockery of the special issue statute. Both "concurring" and "cause" are words as well understood as any definition of same would be, and are not required to be defined. Foster v. Beckman (Tex.Civ.App.) 85 S.W.(2d) 789 (writ ref.).

Appellant contends:

"The trial court in this case erred in submitting Special Issue No. 1 as follows: 'Do you find from a preponderance of the evidence that Mrs. Itasca Currie suffered any injuries to her back as a result of the collision of defendant's truck with her automobile as alleged by plaintiff' because said issue does not confine the jury to the injuries proven, but on the contrary, confines them to the injuries alleged and is therefore clearly upon the weight of the evidence and calculated to confuse and mislead the jury."

Appellee pleaded in part: "* * * With such force and violence as to wrench, sprain, injure and break plaintiff's back, and the vertebra and ligaments and muscles thereof."

The jury are plainly told to "find from the * * * evidence whether Mrs. Currie suffered any injuries to her back * * * as alleged," thus restricting any finding of injuries to such only as are alleged and proven. This is not on the weight of the evidence. It is suggested that there was no proof that any vertebra was broken. Dr. Carroll testified in part:

"I believe there was a fracture * * * the symptoms very strongly pointed to a fracture of an articulate facet. * * * Our final diagnosis was ' * * * a sprain of the ligaments of the back * * * with probably a fracture." *

Suppose appellee did not prove every allegation of his petition respecting injuries? It is held in M., K. & T. Ry. Co. v. Hay, 39 Tex.Civ.App. 51, 86 S.W. 954, (writ ref.): "In an action for injuries the petition alleged other injuries than those proven. The court charged that if defendant was negligent, etc., and if plaintiff was 'thereby injured in whole or in part as alleged in his petition,' the jury should find for plaintiff, etc. Held, that the charge could not be construed as a charge upon facts not introduced in evidence, and as authorizing a recovery for injuries pleaded but not proven."

It is contended that proof of the amount of hospital and doctor bills was made without evidence of the necessary predicate that same were reasonable and necessary. By deposition filed some time before the trial, and in no way objected to prior thereto, Dr. Carroll testified in substance: That Mrs. Currie had assumed obligations and partly paid for certain itemized expenses for doctor bills and hospital service amounting in the aggregate to $260.75, and that same were reasonable and customary charges. There is apparently no direct testimony that same were necessary, but the record as a whole justifies this inference, and we fail to see any reason in law for requiring a direct statement of that which is made plain without it.

The evidence for appellee is that Mrs. Currie was well and able to perform her household duties before the accident; that thereafter she was sick, unable to work, suffered intense pain; that she finally visited Dr. Carroll, a specialist in Dallas; that he treated her, after making X-ray examinations with the result already stated; that he put her body in a cast or brace; that this relieved her, and with its aid she could perform her household duties without pain, but could not without such body brace. In short, he found her almost helpless and suffering intensely and relieved her. What would be his answer to the question, Was your treatment necessary? The circumstances answer the question for him as plainly as if he had spoken.

A further objection was that such evidence was not responsive, etc. This went to the "manner and form of taking" and could not be raised for the first time at the trial by oral objection to the evidence. 15 Tex.Jur. p. 76, § 38.

Similar objections appear to the evidence of Dr. Cochran, to the effect that the doctor and hospital bills were reasonable. If we concede the correctness of appellant's contention, such would not present, in our opinion, reversible error.

The statement in 4 C.J. p. 974, appears to us to announce the correct rule which is decisive of the last point presented: "The admission of objectionable evidence is not cause for reversal, where the same or substantially the same, evidence has been previously received without or over objection, and it does not appear that the evi-

dence, when admitted the second time, exerts more influence than when admitted the first time, or that other prejudice has resulted."

The rule with supporting authorities is stated in 4 Texas S. W. Digest, p. 631, as follows: "Where the other evidence was sufficient to determine the issue the admission of incompetent opinion evidence is harmless error. St. Louis, I. M. & S. Ry. Co. v. Boshear (1908) 102 Tex. 76, 113 S. W. 6, affirming judgment (Tex.Civ.App.) 108 S.W. 1032; Missouri, K. & T. Ry. Co. of Texas v. Rose (1898) 19 Tex.Civ.App. 470, 49 S.W. 133, error refused; International & G. N. Ry. Co. v. Vinson (1902) 28 Tex.Civ.App. 247, 66 S.W. 800, error refused; Chicago, R. I. & G. Ry. Co. v. Core (Tex.Civ.App.1915) 176 S.W. 778; Pecos & N. T. Ry. Co. v. Winkler (Tex.Civ.App. 1915) 179 S.W. 691; Galveston, H. & S. A. Ry. Co. v. Brune (Tex.Civ.App.1915) 181 S.W. 547."

■ Here Dr. Cochran gave his opinion that the charges were reasonable. If we concede that he was not qualified, and strike his testimony, there still remains sufficient evidence of the amount paid and that same was reasonable to support the issue found by the jury favorably to appellee.

Finally, it is contended that the following argument of counsel for appellee to the jury constituted reversible error: "Dr. Davis was down and out. He showed it because he has an old negro nurse."

The background for such argument is: Mrs. Currie went first to Dr. Davis, did not like the surroundings, and went then to Dr. Carroll. Dr. Davis voluntarily came from Dallas to testify, and did testify, against her. His testimony in part was:

"Q. You remember the details of Mr. and Mrs. Currie coming to your clinic about September of 1934? A. The 6th of September, yes.

"Q. And you remember the time that you examined Mrs. Currie's back? A. Yes sir.

"Q. Do you know how many nurses you had at your hospital then? A. How many nurses?

"Q. Yes. A. I don't use nurses; I can do what work I have to do.

"Q. Isn't it a fact that you had one old negro woman there, and that is all? A. I don't run a hospital.

"Q. Isn't it a fact that you had one old negro woman to wait on her? A. Yes.

"Q. That is all you had, wasn't it? A. That is all I needed."

Mrs. Currie testified:

"Q. Why didn't you let Dr. Davis treat you at that time? A. Because he had gone backward instead of forward since I had been to him.

"Q. Did you like the looks of his surroundings? A. No, sir, I didn't."

■ The statement quoted is in our opinion a legitimate deduction from the evidence and a fair criticism of the witness. Surely it could not be said to be so inflammatory and prejudicial that it could not be cured by an instruction to disregard it. None was asked by appellant.

Appellant has filed in this court an 82-page brief. To discuss every point raised would be an unprofitable consumption of space. We have patiently examined all and discussed those appearing to us to be worthy of mention. The others are overruled.

Judgment was for $3,250. This is assailed as excessive. We cannot agree with this, and do not lengthen this opinion to discuss the question further than to say that in our opinion the evidence was amply sufficient to sustain it.

An abundance of precaution no doubt influenced the trial court to submit a multitude of defensive issues. No plainer case of proven negligence has been before this court. Indeed, the appellant's evidence is sufficient to prove it, as already pointed out.

Believing that a correct judgment has been entered, the same is affirmed.