NORTHWESTERN NATIONAL LIFE INSURANCE COMPANY v. MARY E. BLASINGAME ET AL.

Decided March 4, 1905.

**1.—Laws of Another State—Evidence.**

A pamphlet purporting to be the insurance laws of Minnesota, and to have been printed by the "Pioneer Printing Company, State Printers," did not purport to have been printed by authority of that State, and hence was not, under the Texas Statutes, admissible in evidence to prove the law of Minnesota.

**2.—Same—Harmless Error.**

Error in admitting in evidence the laws of another State, and in charging thereon, was harmless where the specific findings of the jury showed that they were not influenced thereby.

**3.—Insurance—Compromise of Death Claim—Consideration—Fraud.**

Where an agent of the insurer, on a contention that the policy, by reason of a breach of the warranties therein, was void, which contention was not made in good faith, or in the belief that it was well founded, or presented a doubtful question, effected a settlement with the beneficiary in a life policy for an amount less than was due under its terms, there was no consideration for the relinquishment of the unpaid balance, and the beneficiary was not bound by the settlement.

Appeal from the District Court of Van Zandt. Tried below before Hon. R. W. Simpson.

*Maurice E. Locke,* for appellant.—1. The court erred in admitting in evidence the pamphlet offered by the defendants for the purpose of proving the statutory law of Minnesota. U. S. Rev. Stats., 905; Texas Rev. Stats., 2304, 2305; Martin v. Payne, 11 Texas, 292; Mexican Nat. Ry. Co. v. Ware, 60 S. W. Rep., 343; Bright v. White, 8 Mo., 421; Minor on Conflict of Laws, sec. 213; Story on Conflict of Laws, sec. 637, and notes; Nat. Bank of Com. v. Kennedy, 83 S. W. Rep., 368;

Armendiaz v. Serna, 40 Texas, 291; Trigg v. Moore, 10 Texas, 197; Di Sora v. Phillips, 10 H. of L. Cases, 624; Liv. and G. W. Steam Co. v. Phenix Ins. Co., 129 U. S., 397.; Bank of China, etc., v. Morse, 168 N. Y., 458, 61 N. E., 774; Alexander v. Pennsylvania Co., 48 Ohio St., 623, 30 N. E., 69; Ufford v. Spaulding, 156 Mass., 65, 30 N. E., 360.

2.   Under the undisputed evidence, the compromise settlement made by Mrs. Blasingame with the company was binding upon her.   Franklin Life Ins. Co. v. Villeneuve, 60 S. W. Rep., 1014, 68 S. W. Rep., 203; Mutual Life Ins. Co. v. Phinney, 178 U. S., 327; Dunn v. Commonwealth Life Ins. Co., 3 Flippen, 379, Fed. Cas., 4174; Rev. Stats., 1265; Platter v. City of Seymour, 86 Ind., 326; Gates v. Shutts, 7 Mich., 126; Dimick v. Insurance Co., 69 N. J. Law, 384, 55 Atl. Rep., 291; Manhattan Ins. Co. v. Burke, 70 N. E. Rep., 74; 8 Cyc., 531.

*Kearby & Kearby,* for appellee.

RAINEY, CHIEF JUSTICE.—In 1902 the appellant insured the life of Dr. H. R. Blasingame for $2,000 in favor of his wife, Mary E. Blasingame.   In 1903 Dr. Blasingame died.   The company denied liability because of certain misrepresentations alleged to have been made by Dr. Blasingame in procuring the policy.   The company paid Mrs. Blasingame $800 in settlement of her claim.   In September, 1903, Mrs. Blasingame sued on the policy to recover the amount thereof, less the $800 paid, together with interest, costs and statutory penalties, and obtained judgment by default in October, 1903.   In January, 1904, the company brought this suit to restrain said judgment, and obtained a temporary injunction.   The company claimed that the service in the original suit was had on a discharged agent, and that it had good defenses to the policy of which it did not avail itself because it knew nothing of said proceeding.   The court held that the company had good excuse for not defending the suit, and submitted the case to the jury on special issues. Upon the verdict judgment was rendered for appellee, from which this appeal is prosecuted.

In the application for the policy Dr. Blasingame stated that he, at that time, did not use opium, morphine, hydrate of chloral or other narcotis, and had never used them, tobacco excepted; also stated that he had neither brother nor aunt that had at any time been afflicted with insanity.   These statements, under the policy, were warranties, and if they, or any of them, were false, under the decisions of this State it would avoid the policy.   The court submitted to the jury whether or not any of said statements so made were false, and the jury returned a verdict stating in effect that such statements were not false.

The appellant complains of the verdict of the jury on these issues on the ground that it is contrary to and not supported by the evidence. The evidence is conflicting on these issues, but there is sufficient evidence to support the verdict of the jury, and the first and second assignments which attack these findings are overruled.

The policy of insurance, among other provisions, contained the following: "This policy is issued and accepted subject to all the provisions of chapter 178, Laws of 1901, of the State of Minnesota, and it is expressly agreed that this contract shall be governed by, subject to, and

construed only according to, the laws of said State of Minnesota, the place of the contract being the home office of the company in Minneapolis of said State."

To prove the laws of Minnesota the court, over objection of appellant, admitted in evidence a pamphlet containing 106 pages, purporting to be the insurance laws of Minnesota. The front cover has "Insurance Laws of the State of Minnesota, comprising all laws relating to insurance in said State in force October 1, 1899," on it. In small letters at the bottom of the front page was printed "St. Paul: Pioneer Press Company, State Printers, 1899," and on the inside it purports to be "an act to revise and codify the insurance laws of the State."

The court gave in charge to the jury the twentieth section of said laws, which reads as follows: "No oral or written misrepresentation made in the negotiation of a contract or policy of insurance, by the insured or in his behalf, shall be deemed material or avoid the policy or prevent its attaching, unless such misrepresentation is made with actual intent to deceive and defraud, or unless the matter misrepresented increases the risk of loss."

The admission of said pamphlet and the giving of said charge are assigned as error. The courts of this State can not take judicial cognizance of the statutory laws of other States, and for them to operate in this State they must be proved in the way regulated by law. Our statutes provide that such laws may be proved, when the printed law purports to have been printed under the authority of such State. They may also be proved under the Act of Congress by certified copy, under the hand of the Secretary of State, authenticated with the seal of State. We know of no other mode by which it may be done. The pamphlet did not purport to have been printed by the authority of the State of Minnesota; nor was it certified to by the Secretary of State. This being the case, the admission of said pamphlet as evidence was error. It follows that the giving of the charge relating to the law of Minnesota was also error. However, as the jury found specifically on the issues raised, from which we think it appears that they were not influenced to so find from the action of the court in reference to the laws of Minnesota, we hold that such error is harmless.

On the question of settlement the jury found that George F. Getty, appellant's agent, "did not act in good faith in contending that the policy was void, believing that the contention was well founded or presented a doubtful question." It is contended that this finding is contrary to the evidence. The evidence shows that George F. Getty was a lawyer, appellant's agent, who came down here from Minnesota to settle with Mrs. Blasingame. He went out to her home in the country and represented to her that he had made investigation and had found out that Dr. Blasingame had misrepresented in his application his habits as to the use of morphine, whiskey, etc.; that he had no insane brother or aunt and that he had no other insurance; that these representations were in fact not true, and that they were sufficient to defeat the policy. After endeavoring to impress those matters upon her, he offered her $250 in settlement. This she refused. He then offered her $500 which she agreed to take, but he finally asked her how many children she had, and upon her stating she had seven, he stated he would make it $800, that

being $100 for each, and told her to tell no one how much was paid. When all the circumstances surrounding the transaction are considered, we think the evidence supports the verdict.

There was no consideration for Mrs. Blasingame to relinquish the balance of the policy above $800. This holding we think is supported by Insurance Co. v. Villenueve (29 Texas Civ. App., 128, 68 S. W. Rep., 203) and Life Association v. Findley (29 Texas Civ. App., 494, 5 Ct. Rep., 325).

The judgment is affirmed.

　　　　　　　　　　　　　　　　　　　　　　　　· *Affirmed.*

Writ of error refused.