**COMMERCIAL STANDARD INS. CO. et al.
v. SHUDDE et ux.**

No. 4295.

Court of Civil Appeals of Texas.
Amarillo.

Oct. 29, 1934.

Rehearing Denied Nov. 26, 1934.

562

D. A. Frank and W. P. Bondies, both of Dallas, and Simpson, Dorenfield, Foster & Fullingim, of Amarillo, for appellants.

L. B. Godwin, Clayton & Bralley, and Works & Bassett, all of Amarillo, for appellees.

MARTIN, Justice.

Appellee brought suit for injuries to his wife, alleged to have occurred while she was a passenger in a taxicab, at a street intersection in the city of Amarillo. The evidence shows, in substance, that a collision occurred between said taxi and a truck being driven by the agent of R. L. and W. A. McSpadden. Appellant Insurance Company was joined as one of the defendants. It properly filed and presented its plea in abatement, which was overruled.

This action is assigned as error, it being contended, in substance: First, that causes of action ex contractu and ex delicto may not be joined; and, second, that the policy of insurance issued by said appellant and covering the taxi in question contained a "no action" clause in substantially the same language as the policy in Ray et al. v. Moxon et al. (Tex. Civ. App.) 56 S.W.(2d) 469, and therefore its joinder was improper.

An examination of the policy in the present case, issued by said appellant, reveals that it is substantially identical in its terms with the one construed in Ray v. Moxon, supra. Unless the present case distinguishes itself from the latter, the assignment must be sustained. Kuntz v. Spence (Tex. Com. App.) 67 S.W.(2d) 254.

We have concluded that the present case is plainly distinguishable from the two last mentioned, and that these do not rule it upon the question under discussion.

Prior to the issuance and delivery of the policy in question, there was in existence an ordinance of the city of Amarillo which contained the following provision:

"A. Taxi-Cab: A taxi-cab within the meaning of this ordinance is any automobile or motor driven vehicle carrying a person or persons for hire within the limits of the City of Amarillo and not operating over a regular and fixed route. * * *

"Section V. It shall be unlawful to operate a taxi-cab in the City of Amarillo for hire or permit the same to be operated unless and until a license or permit shall have been issued under the provisions hereof therefor, and no license or permit shall be issued there-for until the applicant for such license or permit deposits with the City Secretary a policy or certificate of liability insurance for which a license or permit is sought. Said policy or certificate of liability insurance to be acceptable and approved by the City Manager of the City of Amarillo, and to be issued by a company or companies authorized to do business in the State of Texas indemnifying the applicant in the sum of Five Thousand Dollars ($5,000.00) for injury to one person or Ten Thousand Dollars ($10,000.00) for injury to more than one person as the result of any one accident, or collision, and providing for Five Hundred Dollars ($500.00) property damage in any one accident, through and by reason of the operation of the taxi-cab of the applicant which policies or certificates of liability insurance shall give a right of action against such company as indemnitors in favor of the person or persons so injured without the necessity of making the City of Amarillo either a party plaintiff or defendant and such policies or certificates of liability insurance shall not be subject to cancellation after delivery except on thirty days notice in writing to the City Manager of the City of Amarillo, and when and if such policies or certificates are cancelled the owner of such taxi-cab shall not operate or permit same to be operated until additional policies or certificates are filed in the same amount and in the manner hereinabove provided. The applicant for such license or permit shall file with the City Secretary, prior to receiving such permit or license, a receipt showing any and all premiums due such companies furnishing said indemnity have been paid."

The constitutional right of a municipality to license and to regulate the operation of a dangerous instrumentality upon its public streets does not admit of any doubt. It is now equally well settled that it has the constitutional right to enact compulsory insurance legislation, prescribing as a condition for the use of its streets by taxicabs, jitneys, etc., the issuance to such of liability insurance for the protection of the public. Such right has been frequently and vigorously attacked, and ofttimes upheld. See notes 22 A. L. R. 230. See, also, article 1175, subds. 20, 21, R. C. S., 1925; Dallas Taxicab Co. et al. v. City of Dallas et al. (Tex. Civ. App.) 68 S.W.(2d) 359; Fletcher et al. v. Bordelon et al. (Tex. Civ. App.) 56 S.W.(2d) 313, writ refused; City of San Antonio et al. v. Fetzer et al. (Tex. Civ. App.) 241 S. W. 1034, writ refused; Auto Transit Co. et al. v. City of Ft. Worth et al. (Tex. Civ. App.) 182 S. W.

685, writ refused; Ex parte Sullivan, 77 Tex. Cr. R. 72, 178 S. W. 537; Greene v. City of San Antonio et al. (Tex. Civ. App.) 178 S. W. 6, writ refused.

■■ Both the insurer and insured in this case entered into the contract of insurance in question here with full notice of said ordinance.. By its specific terms such policy of insurance shall "give a right of action against such company as indemnitors in favor of the person or persons so injured." Such policy is referred to throughout as "liability insurance." The terms of the ordinance will be read into the insurer's contract. 9 C. J. § 56, pp. 34 & 35; Stowers Furniture Co. et al. v. Bichon (Tex. Civ. App.) 254 S. W. 606; Southland Greyhound Lines, Inc., et al. v. Dennison (Tex. Civ. App.) 62 S.W.(2d) 500. The above ordinance having pointedly authorized a direct action against the insurer by the injured party, the trial court correctly overruled appellant's plea in abatement. American Automobile Ins. Co. v. Struwe (Tex. Civ. App.) 218 S. W. 534, writ refused (for copy of ordinance construed in Struwe Case, see American Automobile Ins. Co. v. Cone [Tex. Civ. App.] 257 S. W. 961); Texas Landscape Co. v. Longoria (Tex. Civ. App.) 30 S.W.(2d) 423 (writ dismissed); American Fidelity & Casualty Co. v. Williams et al. (Tex. Civ. App.) 34 S.W.(2d) 396 (writ refused); Blashfield's Cyc. of Automobile Law, Vol. 3, p. 2658.

The recent case of Cannon Ball Motor Freight Lines et al. v. Grasso et al. (Tex. Civ. App.) 59 S.W.(2d) 337 (writ granted) is cited by appellants as sustaining their contention of misjoinder of parties. This case construes an entirely different statute from that under consideration. In addition a writ was granted by the Supreme Court. The Struwe Case, supra, approved by the Supreme Court, when read in connection with the Cone Case, supra, is directly in point.

It will be noted that the said ordinance makes reference to the insurers as "indemnitors" and uses the word "indemnifying." These, it is contended, make the ordinance either one calling for indemnity as distinguished from liability insurance, or create such uncertainty as to make it void. The mere references noted in our opinion do neither, in view of the specific and certain provisions intended to create and which we think do create primary liability.

■ Nor do we think such•ordinance runs counter to any "public policy" as announced in Ray v. Moxon, supra, and approved by the Supreme Court in Kuntz v. Spence, cited above. The last case, as respects the point at issue, involves only the construction of a private contract between individuals. It is not, as contended by appellants, in opposition to the appellees' theory in this case, but on the contrary impliedly recognizes the right to sue an insurer direct where an ordinance or statute authorizes it.

■ Appellant H. E. Dodd was the owner of the taxi involved here, and the appellant L. W. Stewart its driver. Ten separate and distinct affirmative acts of negligence were alleged as grounds of recovery. The existence of all ten was submitted by the trial court with appropriate corollary issues. Answers favorable to appellee were made by the jury to all. Concerning the legal sufficiency of the pleading and proof to sustain each of these, no complaint appears in appellants' brief. In one of these the court uses the phrase "dangerous rate of speed" and in another "proper lookout." Objections were made and properly brought.forward in the record, to the court's failure to define these terms. Assuming, without deciding, that both are legal terms which must be defined, still the error was harmless. We quote from West Texas Coaches, Inc., v. Madi et al. (Tex. Com. App.) 26 S.W.(2d) 199, 202: "Since the judgment finds support on one ground of negligence, the error of the court in improperly submitting another ground of negligence alleged was harmless. Thornton v. Moody (Tex. Civ. App.) 24 S. W. 331 (error refused); Northwestern Nat. Life Ins. Co. v. Blasingame et al., 38 Tex. Civ. App. 402, 85 S. W. 819 (error refused); Ward et ux. v. Cathey (Tex. Civ. App.) 210 S. W. 289 (error refused); Yoes v. T. & P. Ry. Co. (Tex. Civ. App.) 211 S. W. 311; Eastern Texas Elec. Co. v. Hunsucker (Tex. Civ. App.) 230 S. W. 817."

■ There is yet another reason for refusing to define "proper lookout," which we mention in view of the conflict between this and other Courts of Civil Appeals as to the necessity of defining this term. See Ray v. Moxon, supra, where this conflict is discussed.

"Proper lookout" has been defined as "such as would be kept under the circumstances existing at the time by a person of ordinary care and prudence." Psimenos v. Huntley (Tex. Civ. App.) 47 S.W.(2d) 622, 624. This is but a substantial definition of negligence. The orthodox method of submitting such is first to submit whether or not the offending party failed to keep a "proper lookout," and, second, was such failure, if any, negligence? Thus .it appears in some of the issues submitted in this case. One of the trial court's

definitions of "negligence" was: "That 'ordinary care' means such care as a person of ordinary prudence would use under the same or similar circumstances, and a failure to use ordinary care is negligence. Negligence may be further defined as doing that which a person of ordinary prudence would not do, or the failure to do that which a person of ordinary prudence would do under the same or similar circumstances."

Translated into its effect, the appellants contend that the trial court should have twice submitted the existence of negligence. Thus: Did A fail to keep a "proper lookout," that is, did A fail to do that which a person of ordinary prudence would do under the same or similar circumstances? Second, was such failure, if any, negligence, that is, did A fail to do that which a person of ordinary prudence would do under the same or similar circumstances?

Two submissions of the same issue are never required. A finding of negligence, properly defined, relates back to proper lookout, and completely, we think, protects the adverse party. It seems plain to the writer not only that the court here correctly refused to define the term "proper lookout," but that his doing so would have furnished the basis for a proper objection by appellee that such definition amounted to giving undue prominence and emphasis to one of the issues of the case in such way as to amount to an intimation from the court that there was some doubt in his mind as to its existence.

■ Appellants' seventeenth proposition is as follows: "Defendants having pleaded that the actions of the driver of the truck was a new and independent cause of plaintiff's injuries and there being evidence to sustain it the Court should have submitted issues as to whether such actions of the truck were a new and independent cause of plaintiff's injuries."

In our opinion the evidence raises no such issue. One of the ten issues of negligence submitted by the trial court was in substance whether or not the driver of the taxi which carried Mrs. Shudde as a passenger attempted to drive across the intersection of the streets where the collision occurred, in front of the truck. This was answered in the affirmative, and that same was negligence and was the sole proximate cause of the injuries to Mrs. Shudde. These are three of the elements of a new and independent cause: (1) An intervening efficient force which breaks the causal connection between the original wrong and the injury. (2) Such new force must be sufficient of itself to stand as the cause of the injury. (3) Such new and independent cause must be one incapable of being reasonably foreseen by the original wrongdoer by the exercise of ordinary care on his part. The testimony sufficiently raised the issue that the truck entered the street intersection ahead of the taxi. It conclusively appears that its approach was plainly visible to the taxi driver. All three of the above elements are totally absent in this case. Under the most favorable view of the evidence, an issue of the concurring negligence of the truck and taxi driver may be present. This is not a defense. Fort Worth & Denver City Ry. Co. v. Rowe (Tex. Civ. App.) 69 S.W.(2d) 169. All issues of alleged negligent acts on the part of the truck driver submitted to the jury were answered favorably to such driver. The sequence of events eventuating in the injury was found by the jury to have been set in motion by the negligent act of the taxi driver in attempting to pass in front of the truck. Their sequence was not broken by any act of the truck driver. The presence of the truck in the intersection may have furnished the occasion for, but not the sole cause of, the injury to the taxi passenger.

■ Certain special issues requiring a "yes" or "no" answer were followed by others prefaced with, "if so, do you find," etc. These latter were properly excepted to as being on the weight of the evidence. In our opinion there is no merit in the exception. Hamon et al. v. Sanderford (Tex. Civ. App.) 28 S.W. (2d) 861; Proctor et al. v. Cisco & N. E. Ry. Co. et al. (Tex. Com. App.) 277 S. W. 1047.

■ Appellants' proposition No. 16 is as follows: "The Court's definition of contributory negligence as 'such an act or omission on the part of an injured person as amounts to a want of ordinary and proper care and prudence and which act or omission upon the part of the injured person concurring or cooperating with some negligent act of a defendant is a proximate cause or occasion of the injuries complained of' is improper, inaccurate and prejudicial."

It is only necessary, to be a complete defense in cases of this character, that the negligence of the plaintiff contributes to proximately cause the injury. A charge which requires that such negligence be the sole cause places more burden on the defendant than the law requires. While the definition complained of is not artfully drawn, we believe when it is considered as a whole, a jury would not be warranted in concluding that it required a finding that plaintiff's negligence was

the sole cause of the injury. The quoted definition apparently contains all the elements of contributory negligence, as ofttimes stated in the authorities, and is substantially though not literally correct. Rio Grande, E. P. & S. F. Ry. Co. v. Lucero (Tex. Civ. App.) 54 S.W. (2d) 877; Reilly v. Buster (Tex. Civ. App.) 52 S.W.(2d) 521; Koons v. Rook et al., 295 S. W. 592, by the Commission of Appeals; Texas & N. O. Ry. Co. v. Rooks, 293 S. W. 554, by the Commission of Appeals; Pearson v. T. & N. O. Ry. Co., 238 S. W. 1108, by the Commission of Appeals; Galveston, H. & S. A. Ry. Co. v. Pendleton, 30 Tex. Civ. App. 431, 70 S. W. 996, writ refused; Galveston, H. & S. A. Ry. Co. v. Henning (Tex. Civ. App.) 39 S. W. 302.

Appellants' fifteenth proposition is as follows: "The instruction of the Court that 'a carrier of passengers owes the highest degree of care that a very cautious, competent and prudent person would exercise under the same or similar circumstances' is incorrect in that it places a higher degree of care upon the defendants than that required by law and virtually made the defendants insurers of the safety of the plaintiff's wife."

The phrase "highest degree of care" is under vigorous attack by appellants. Their claim is that this makes the taxi driver insurer of the safety of his passengers. The authorities, in our opinion, fail to support the view of appellants. We quote:

"In the case of Gallagher v. Bowie, 66 Tex. 266, 17 S. W. 407, this court said of a charge which required of a carrier the 'utmost' care: 'The charge properly stated the degree of care exacted by the law of carriers of passengers. Thompson on Carriers, 200; Hutchins on Carriers, § 501; Shear. & Redf. on Neg. § 266. That degree is generally described by the authorities as "the utmost," and the use of this expression in the charge was not objectionable. If it needed explanation or qualification, appellant should have requested a special charge.' This case has often been followed and has never been overruled and fully answers the first question. I. & G. N. R. R. Co. v. Welch, 86 Tex. 205, 24 S. W. 390, 40 Am. St. Rep. 829. It has often been held by this and other courts that the degree of care required by carriers of passengers is the highest. Therefore a charge which tells the jury that a high degree of care is exacted cannot be prejudicial to the carrier, since it does not require greater care than the highest." Houston & T. C. Ry. Co. et al. v. Keeling, 102 Tex. 521, 120 S. W. 847, 848.

"It is the duty of a railroad company as a carrier of passengers to exercise a very high degree of care, or that degree of care which a very careful, cautious and prudent person would exercise under the same or similar circumstances, in the handling and operating of its trains to avoid injury to its passengers." Paris & G. N. R. Co. v. Atkins, 111 Tex. 306, 234 S. W. 66.

"The court instructed the jury that it is the duty of a railroad company, in the management and operation of its trains, to exercise the highest degree of care for the safety of its passengers. This is complained of as being too onerous, and requiring appellant to exercise more care than is imposed by law. A charge requiring a carrier of passengers to use the 'utmost care' to provide for the safety of passengers was approved by our supreme court in Gallagher v. Bowie, 66 Tex. 265, 17 S. W. 407. In the Welch Case 86 Tex. 203, 24 S. W. 390 [40 Am. St. Rep. 829], the same court condemned a charge requiring a carrier of passengers to use 'all possible care'; but, while the opinion refers to Gallagher v. Bowie, that case is not overruled, the court holding that 'all possible care' has a broader and more unlimited meaning than 'utmost care,' which is defined to mean 'all the care and diligence possible in the nature of the case.' The expression 'highest degree of care' is synonymous with, and no broader, than 'the utmost care'; and we believe a jury would understand the two phrases as meaning the same thing." Houston & T. C. Ry. Co. v. George (Tex. Civ. App.) 60 S. W. 313, 314.

Complaint is made of the following remarks of counsel for plaintiff in his closing argument to the jury:

"I submit to you Dr. Shudde was as fair and just as considerate as any man I ever heard testify on the stand, regardless of the injuries, and if he didn't tell the truth, why didn't they get some one to correct him, and he says this condition has seriously reduced her strength and her ability to do the things she loves to do.

"To which argument defendants excepted and now except because said argument was improper, was outside the record, was testimony unsworn to, and it was improper for the attorney to criticize the defendant for not getting other witnesses there to correct Dr. Shudde."

In appraising the merits of a bill of exception of this character, the following must be kept in mind: The probability of injury is to be measured by its relation to the entire case. Cases differ so widely in their facts that precedents are of little value. The trial courts have some degree of discretion in these mat-

ters, and some allowance must be made for zeal of a partisan counsel. Then, too, an appellate court can proceed to a solution of such question only upon the hypothesis that the trial jury was composed of men of average intelligence, not morons selected from a panel of feeble-minded. Thus appraised, we are of the opinion that appellants' bill of exception fails to manifest error. The jury observed the demeanor of and heard the testimony of Dr. Shudde. They are presumed to be able to judge whether or not he was "fair and considerate," and must have understood that counsel's statement was his deduction from and his opinion upon a state of facts known to them as well as counsel. The statement thus appraised was not "unsworn testimony" nor improper. The record suggests the availability of witnesses to rebut such testimony. The latter part of the statement amounted in effect to the claim that Dr. Shudde's testimony was undisputed, and entitled to full credence because appellants might have, but did not, rebut it with the testimony of witnesses. This is, we think, inferable from the record. The verdict here is amply supported by the evidence. There is nothing in the record which to our minds furnishes any basis for a claim that passion or prejudice controlled or influenced the jury. The assignment is overruled.

■ The following is assigned as error:

"155. The Court erred in permitting the witness, W. L. Lyons, to testify on direct examination in favor of the plaintiff as follows:

"Q. Now, Mr. Lyons, did you see any tracks there? A. Tracks of which one do you mean?

"Q. Of the taxi-cab? A. Yes, sir.

"Whereupon the defendants objected as to the witness seeing the tracks of the taxi-cab on the ground that the witness could not be heard to say who made the tracks, and because it was a conclusion of the witness, which objections were by the court overruled, and the defendants excepted, and the witness answered: A. Yes.

"Q. All right, take this paper and show on there where you saw the tracks of the taxi-cab.

"Whereupon the defendants objected because the witness was not an eyewitness, and the testimony that they were the tracks of the taxi-cab would be hearsay and a conclusion.

"Q. Well, these tracks you saw, state whether or not you could trace them up to the taxi-cab?

"Whereupon the defendants objected to the said question as leading, which objection was by the court overruled and defendants excepted, and the witness answered:

"A. Yes, sir."

This related to a matter which was not in dispute, even if this testimony be eliminated. The error, if any, was harmless.

Other assignments have been carefully considered and are overruled. They relate largely to questions so plainly without merit that their discussion would lengthen this opinion without adding anything of value to it.

The judgment is affirmed.