## MERCANTILE NAT. BANK AT DALLAS v. HICKMAN.
### No. 4359.

Court of Civil Appeals of Texas. Amarillo. Feb. 18, 1935.

Rehearing Denied March 18, 1935.

Brown & Hamlin, of Dallas, for appellant.
Moore & Moore, of Paris, for appellee.

MARTIN, Justice.

The pleadings of appellant with all exhibits are too lengthy and involved to here reproduce them literally. We will endeavor to state so much of their substance and effect as will furnish a background for the questions discussed, reproducing only a portion of same.

Appellant is alleged to be the successor of Mercantile Bank & Trust Company of Texas, trustee for the bondholders, with authority to collect and receive all amounts due on the bonds hereafter mentioned. Appellant alleges that the Sanitary Appliance Company, Inc., on October 1, 1929, entered into a contract with the city of Paris, a municipal corporation, for the sale to it of 1500 units of Saco Pit toilets. This contract was made a part of appellant's pleadings. We quote a portion of this:

"The Company agrees to furnish to the City 1500 Units of a patented device manufactured under the trade name of Saco Pit Toilet. * * *

"In consideration of the delivery to the City of said manufactured devices, delivery to be made F. O. B. Paris, Texas, the City agrees to pay to the Company the sum of Thirty-seven Thousand Five Hundred ($37,500.00) Dollars within ten (10) days from said delivery, payment to be made in manner hereinafter set out.

"Due to the fact that the City does not have on hand available for the purpose funds with which to pay said sum of money, the City binds itself to issue to the Company its interest-bearing revenue bonds of even date herewith, bearing six per cent (6%) interest, payable semiannually, maturing serially within seven (7) years from their date, at time and in manner and amount hereinafter agreed on, payable at Chase National Bank of the City of New York, N. Y., which said Revenue Bonds, principal and interest thereof are payable out of the revenue to be derived from the rental of the Saco Pit Toilets received by the City after the installation of same in the City of Paris, which rental to be charged by the City of Paris is to be Fifty (50) cents per month. To afford additional security and further insure the payment of said Revenue Bonds as they may become due, the City of Paris agrees to pass an ordinance appropriating the sum of Seventy-Five Hundred ($7,-500.00) Dollars to be collected out of the tax levied for the year 1929, and to make said sum of Seventy-Five Hundred ($7,500.00) Dollars a special fund to be held by its treasurer for a period of seven (7) years, for the purpose of paying during that time any deficiency of principal or interest which the rentals collected by the City of Paris from the citizens for the installation and use of said Saco Pit Toilets do not pay * * *

"The City of Paris obligates itself to install, operate, and charge, and, in good faith, to exercise ordinary care to collect a rental of not less than Fifty (50) cents per month for each of the fifteen hundred (1,500) units so purchased, during the entire life of said Revenue Bonds.

"The City will apply out of collections from the rentals so much of same as may be necessary to pay Revenue Bonds falling due annually, and semi-annual interest. If a surplus of rentals exists, same is to remain in possession of the City Treasurer as a special fund to be used and applied as of follows: .

"Said money shall be used for the purpose of calling in and paying off before their maturity Revenue Bonds of this issue, to be called inversely in their numerical order,— that is to say Bond No. 38 shall be the first bond called for and paid. Said fund shall be used for no other purpose than to pay

principal and interest on bonds of this issue, and surplus remaining in said Special Fund, after all bonds and coupons of this issue have been paid, shall be returned to the General Fund of the City.

"If a deficiency in revenues occurs for any year, same is to be paid by warrants on the Seventy-Five Hundred ($7500.00) Dollars pledged; * * *

"In addition to the foregoing, the City of Paris agrees to give the Sanitary Appliance Company, Inc., a mortgage or deed of trust on the appliances to be delivered hereunder and pledges the revenue therefrom and confers the right upon the said Sanitary Appliance Company, Inc., at any time the City of Paris should fail to pay any revenue bond or any installment of interest thereon when due out of the Revenues received from the operation of said system or by the use of all or a portion of the said sum of Seventy-Five Hundred ($7,500.00) Dollars hereinbefore pledged that said Sanitary Appliance Company, Inc., may take over the operation of said system and through its employees or agents operate same and collect the rentals thereof or a sufficient amount of same to pay said Bonds and interest due thereon and reasonable expense of collections, and an additional Ten (10%) per cent attorney's fees, and if necessary in order to accomplish the payment of bonds, principal, interest and expenses of collection said Sanitary Appliance Company may increase the rental charged from Fifty (50 cents) cents per month per unit to not exceeding a reasonable rental therefor."

The installation of fifty-six of these Saco Pit units is alleged to have been made on the property of appellee within the corporate limits of the city of Paris, and a failure and refusal of appellee to pay the monthly dues on same, and an indebtedness of $654.50 unpaid. Its prayer is: "Wherefore, premises considered, plaintiff prays that defendant be cited in terms of law to answer this petition, and that upon final hearing hereof, it have judgment against defendant for said sum sued for, with legal interest, costs of suit and for general and special relief in law and in equity."

The city of Paris was not a party to this suit.

A general and several special demurrers were sustained to appellant's petition, and, having declined to amend, its cause of action was dismissed.

■ Under the terms of said bond and contract the city of Paris was the principal obligor, not the appellee. He was only secondarily liable, if at all, to appellant. Suppose the city has collected in full from all other users of said Saco Pits (1,500 were sold) and now has in its treasury from such source more than sufficient funds to pay appellant its obligation, would the appellee then be indebted to appellant in any amount? It might be conceded he would be indebted to the city of Paris, with whom only he had any original contractual relations with respect to the use of Saco Pits, without affecting the question we presently decide. Can the obligee in the bonds ignore the principal and only obligor thereon, and sue only the party whose obligation to pay appellant, if any he had, was impliedly conditioned upon the failure of the city to collect sufficient fees from the users of Saco Pits in addition to $7,500 of tax money to pay appellant's indebtedness? The allegation appellant makes is that the city of Paris was in default in the payment of the principal and interest on about $24,000 of said bonds. This is all that is alleged respecting this matter. Has the city failed to collect sufficient dues to pay appellant? Has it now on hand ample funds which in law belong to appellant, and which it wrongfully refuses to pay over to appellant, or is it refusing to perform its contractual duty of collecting the fees pledged to the payment of the bonds? These questions may vitally affect the result of this case, and are mentioned to illustrate the necessity of the city being made party. This record is teeming with contentions that the bonds are void, and this may have been the reason for the failure of the city to pay appellant, rather than its inability or failure to collect dues for the use of the appliances purchased from said company. We are of the opinion that the city of Paris was an indispensably necessary party to this suit, it being the principal obligor on the bonds, and its presence as a party defendant being necessary before appellant could validly mature said bonds, and secure a judicial ascertainment of the existence of the facts, upon which a judgment against appellees must necessarily rest. 32 Tex. Jur. pp. 13, 19, 31, 33, 38, 39.

■ Again one of the stipulations of the contract quoted above, which is made a part of appellant's pleadings, gives the right to the Sanitary Appliance Company, Inc., to take over the "operation of said system—and collect the rentals thereof, or a sufficient amount of same to pay said bonds and interest due," etc., upon the condition named therein. The specific condition upon which a right to collect rentals depended was the failure of the city of Paris to pay "out of revenues received

from the operation of said system, or by the use of all or a portion of said sum of $7,500.00 hereinbefore pledged." Appellant's petition is entirely bare of any allegation of a breach by the city of this condition. If we concede the right of a city to bargain away its police power over a subject so vital to public health as the above, assuredly it should not be tolerated without a strict compliance with the terms of the contract under which such right is claimed. If there could exist a state of facts which would excuse a failure to plead and prove a breach of said stipulation, such do not appear in appellant's petition.

The bonds were allegedly issued by virtue of the authority given in article 1111 et seq. R. O. S. 1925, and amendments (Vernon's Ann. Civ. St. art. 1111 et seq.). By the terms of one of these articles, it is provided: "No collection fees shall accrue, and no foreclosure proceedings shall be begun in any court or through any trustee, and no option to mature any part of such obligation because of default in payment of any installment of principal or interest shall be exercised until ninety days written notice shall be given to each member of the city council of such city or town and to each member of such board of trustees, if any, that payment has been demanded and default made, which notice shall date from the sending of a prepaid registered letter to each person to be notified, addressed to them at the post office in such city or town. If the installments of principal and interest then due shall be paid before the expiration of said ninety days, together with the interest prescribed in such contract, not exceeding ten per cent per annum, from the date of default until the date of payment, it shall have like effect as if paid on the date the same was originally due." Art. 1118, R. C. S.

The terms of this law will be read into the face of the bonds in question. Commercial Standard Ins. Co. v. Shudde (Tex. Civ. App.) 76 S.W.(2d) 561, 564, and authorities there collated.

Appellant's petition alleged: "That default has been made in the payment of the interest on said bonds, as well as a portion thereof now due and owing in about the sum of $24,-000.00, leaving a balance of approximately the sum of $24,000.00 principal and interest, and by the terms of said bonds as well as said contracts and ordinances, and on account of the accelerated maturity clauses therein, plaintiff has before the institution of this suit declared the entire amount of same due and payable."

There was no attempt made to allege any compliance with the provisions of said statute before suit was brought. Appellant assumes, apparently, that his option to mature all of said bonds may be exercised and suit brought without any notice being given as above provided. The stipulations of article 1118, R. C. S. 1925, constitute, in our opinion, conditions precedent to the right of appellant to maintain this suit, and the performance of these in exact accordance with the requirements of said article must be alleged and proven. 1 C. J. p. 976; City of Waco v. Watkins (Tex. Civ. App.) 292 S. W. 583, and numerous authorities there collated.

We do not pass on the alleged invalidity of the bonds in question in the present state of the record. We decide the above questions upon the assumed hypothesis that said contract with the city and the bonds were both valid and enforceable obligations, but a decision of this point will not be implied from any expression in this opinion, as in our opinion such question can and ought to be decided if and when a case is properly pleaded to which the city of Paris is a party.

What we have said disposes also of appellant's contention that there was an implied promise of appellee to pay appellant. Such implication must arise, if at all, from the entire record, and this evidences no such promise, except upon the contingencies already discussed.

For the reasons above discussed, the trial court's action was, in our opinion, correct.

Judgment affirmed.

### On Motion for Rehearing.

Vigorous complaint is made by appellant, in a motion for rehearing, that we copied and emphasized the provisions of the original contract between the parties, when such contract had been merged into a "Trust Indenture," which last instrument gives to appellant the right it attempted to exercise. The contract, a portion of which is quoted, is full and specific and was attached in its entirety to appellant's pleading. Appellant saw fit to attach only article IX of the so-called "Trust Indenture" as Exhibit C to his pleadings. This begins: "In any case in which, under the provisions of Article VIII hereinbefore, the Trustee has the right to declare the principal of all bonds hereby secured and there outstanding to be due and payable immediately, etc."

What are the provisions of article VIII and others purposely omitted by appellant? We

presumed originally that the terms of the original contract were followed, not contradicted, by the "Trust Indenture," and we again refuse to indulge the presumption that a contract fully set out in its entirety has been merged into a trust indenture, when no pleadings exist to support such presumption. The state of the pleadings compels us to give effect to the contract. The language of its concluding paragraph is in part: "Pledges the revenue therefrom * * * and * * * at any time the City of Paris should fail to pay * * * out of the revenues received from the operation of said system, or by the use of all or a portion of the said sum of $7500.00 * * * the Sanitary Appliance Company, Inc. may take over the operation of said system * * * and collect the rentals thereof."

The "revenues therefrom" is pledged, not the contracts of the users of Saco Pit toilets. There is no allegation that such contracts have either been assigned or pledged to appellant. Fairly considered, its pleadings allege a right in it to collect from appellee by virtue of its aforesaid contract, and its trust indenture, which in the present state of the record we presume follows the contract. Appellant pointedly, by contract, limited its right to collect from the users of Saco Pit toilets to the specific contingencies quoted above. These were not alleged to exist.

Motion overruled.