## TEXAS CITIES GAS CO. v. DICKENS et al.
### No. 2324.

Court of Civil Appeals of Texas. Waco.
Nov. 6, 1941.

Rehearing Denied Dec. 18, 1941.

See, also, 133 S.W.2d 810.

Darden & Burleson, of Waco, for appellant.

John McGlasson, Richey, Sheehy & Teeling, and Sleeper, Boynton & Kendall, all of Waco, for appellees.

SCHARFF, Special Justice.

N. P. Dickens, a city fireman, sued the Texas Cities Gas Company, Lone Star Gas Company, the First National Bank of Waco, and W. B. Dossett, T. B. Brazelton and E. A. Flowers, composing the Waco Land Trust, for injuries sustained by him as the result of an explosion caused by natural gas escaping into a burning building, while acting in his line of duty as a fireman. The case was submitted to a jury on special issues and the jury acquitted all of the defendants of negligence except the Texas Cities Gas Company and found that its negligence and failure to cut off the gas within a reasonable time after it learned of the fire and explosion was the proximate cause of the injuries sustained by plaintiff and fixed his damages at $20,550. Upon the findings of the jury the court rendered judgment in favor of plaintiff for said sum against Texas Cities Gas Company and denied a recovery by plaintiff against the other defendants and denied a recovery on the cross-actions asserted by each of the codefendants. Texas Cities Gas Company has appealed, and it will be referred to as appellant; Dickens as appellee; the First National Bank of Waco as the Bank; and the Waco Land Trust as the Land Trust.

Appellant assigns error on the part of the court in rendering judgment against it because, under the pleadings and evidence, appellee was at most a mere licensee as to appellant, and that the appellant owed no duty to said appellee save and except the duty not to wilfully injure him and not to injure him by its active negligence, and that the finding of the jury in response to special issue No. 3, to the effect that appellant failed to cut off the gas within a reasonable time, was not a finding of active negligence; and therefore the appellee was not entitled to recover.

The evidence showed that the Liberty building and annex were owned by the Bank and Land Trust at the time of the fire and explosion in question and were located on 6th and Austin streets in Waco. The appellant supplied gas to the premises, and the jury found that the Bank and Land Trust were not owners of the supply line nor was it under their control. There is no dispute as to the right of the appellant to serve the premises with gas by virtue of the contractual relationship between appellant and the owners of the building. The evidence shows that an explosion and fire occurred in the basement of the building on the morning of October 4, 1936. Appellee, at that time, was a fireman employed by the city of Waco. The Fire Department of Waco was summoned to the Liberty building immediately after the first explosion.

The evidence disclosed that approximately 3000 cubic feet of gas per minute was escaping into the basement of the building. The Chief of the Fire Department immediately had Mr. Burke, appellant's superintendent, notified to cut off the gas. Mr. Burke arrived at the scene of the fire within a short time after being notified. Mr. Fulton, another employee of appellant, arrived shortly thereafter. There is evidence in the record that the gas was not turned off from forty-five minutes to an hour and one-half after Mr. Burke's arrival, and that it would take only a few seconds to cut off the gas; and that both Burke and Fulton knew that gas was escaping into the basement of the building. There was sufficient evidence to support the answer of the jury to special issue No. 3.

The evidence disclosed that the appellee was injured while standing at the curb line in the gutter; that the gas line was located in the basement of said building at some distance from where the appellee was injured, and that the appellee never came in contact with the gas line or that portion of the premises where the same was located and which might be said to have been under the control of appellant.

We are of the opinion that the appellant had no ownership or control of the place where the appellee was injured, and the appellee's relationship to the appellant was not that of a licensee. Prairie Pipe Line Co. v. Dalton, Tex.Civ.App., 243 S.W. 619; Texas-Louisiana Power Co. v. Webster, 127 Tex. 126, 91 S.W.2d 302.

If we are mistaken in our view that appellee was not a mere licensee as to appellant, we are still of the opinion that the findings of the jury to special issue No. 3 was a finding of active negligence even though such finding embraced only an omission on the part of the appellant. Valee v. Joiner, Tex.Com.App., 44 S.W.2d 983.

Appellant complains of the action of the court in failing to instruct a verdict in its favor, for the reason that the undisputed evidence showed that appellee knew, understood and appreciated the danger, hazard, and peril of fighting said fire at said time and place, and voluntarily exposed himself to said known danger, hazard and peril, and therefore incurred the risk which caused his injury, and was guilty of contributory negligence as a matter of law.

The undisputed evidence in this case shows that appellee was employed by the Fire Department of the city of Waco at the time he received his injuries; that an explosion and fire occurred in the Liberty building during the early morning of October 4, 1936; and that appellee, together with other firemen, was summoned to the fire.

The Fire Chief testified, in part, substantially as follows: That when he arrived at the scene of the fire, the fire had made considerable progress and was shooting out of the freight elevator hole and another hole on the side of the building to a height of four or five stories; that the firemen would drive it back in there if they would hold the hose down in the hole; that the water would keep the fire from coming out, but as soon as they took the hose off it would come out; that before Mr. Dickens got hurt the Chief observed that at least three or more times the fire had been driven back into the basement and that it came back-lashing out of the manhole, and that was just as apparent, or possibly more apparent, to the men fighting the fire than it was to anybody else; that when he observed the firemen playing the streams of water into the manhole he told them to stay back and not crowd it too close. He did this because he thought the fire was liable to backlash and flash up in their faces.

Mr. Gillette testified, in part, and substantially as follows: That he was a fireman working on the hose with appellee; that when they were in the gutter the fire would flash out just like gun powder would go off and roll up the side of the building; that he had seen that flame puff out and blow out of there a number of times before the flash came that hurt appellee, but that they were not as big as the one that puffed and flashed out at the time appellee got hurt; that he realized it was a dangerous fire. At one point in his examination the witness testified that the Assistant Fire Chief did not give the firemen any warning, but subsequently testified as follows: "Q. Just to refresh your recollection, do you remember this question was asked, Mr. Gillette: 'Do you remember Assistant Fire Chief Harrington or Chief Meers warning you to go back from that hole there in the sidewalk?' and you answered 'Lee Harrington did,' and then the next question was asked 'What did Lee say?' Answer: 'He told us—he came up and asked us how we were getting along, and told us we had better back up, as near as I can remember, and I believe we were fixing to back up when we got burned,' and then this next question, 'How long before you got burned was it that Mr. Harrington had warned you,' and you answered, 'I judge about as far as from here to that street.' Question: 'That would be about one hundred feet?' and you said, 'Yes, sir.' Now with that to refresh your recollection, when Mr. Harrington came by just before the flash happened, do you remember now that he said anything about you ought to back up? A. I believe I do now, since you mention it."

N. P. Dickens, appellee, testified, in part, substantially as follows: After he heard the first explosion, which made a tremendous noise, his crew was called to the fire. He drove a truck to the fire and parked it at some distance from the building and proceeded to lay the hose line to the fire. After completing this task, he went to the hose nozzle, on which four men were used, two on each side, he being the back man on one of the sides. He observed that there had been a terrific explosion, which, in his opinion, caused the fire. He described the fire in the basement of the building, which was visible through

holes in the sidewalk, as a terrible fire, the worst looking thing he ever saw; that the basement was aflame and glowing red; that roaring noises were coming from the basement; that these noises were unusual and sounded like they were made by an acetyline torch or blast furnace, and were continuous.

When asked whether he could see the gas burning in the basement through a hole in the sidewalk, he replied, "Yes, you could see it, you could not tell what it was, but you could see that terrible fire, and the fuel or whatever it was that was causing it was coming from the basement." He also stated that as far as he knew the gas was escaping from the time he got there until he was taken away, and there was an awful lot of pressure.

Water was turned on the fire in the basement through holes in the sidewalk, and at first the water had no effect and it appeared that the building would melt down, but after some time it seemed that progress was being made and the fire was cut down. While they were trying to put out the fire in the basement and were making some progress, it appeared the gas would accumulate and again catch on fire with a kind of puff like a gas stove does when you light it; that he knew if gas accumulated before you touch a flame to it, it has a tendency to blow up.

He said that he had over twenty years' experience as a fireman, but had never fought a fire like this one, and it was a new experience for him; that he knew the dangers incident to fighting fires.

He stated that at one time when he got back to the hose nozzle it was inside right close to the elevator shaft and that the Fire Chief told the firemen it was too dangerous in there, that they should know better, to back up and get out, and that they obeyed his instructions and backed up to the gutter line. In response to a question as to whether he knew better than to go in there, he replied, "I will tell you the truth, you don't know and you do know, one time you can crowd the fire and next time you think you had better not, you know in fighting fires the time to get there is the time to crowd it." He replied, in response to a question as to whether they crowded the fire any more, as follows: "Well, I think possibly we maybe crowded it a little bit, I don't know, we crowded it a little bit there and the Assistant Chief came along and told us to back out and not crowd it any more;" that they obeyed his instructions and backed up to the gutter line. He stated that he did not know how long after he had been back to the gutter before the explosion occurred which injured him, that after he arrived at the fire there was only one explosion and that was the one which injured him.

The evidence shows that Dickens was straddling the hose line back of the nozzle; and that he was standing at the curb line in the gutter just before he received his alleged injuries. There is evidence that he was only a few feet from the hole in the sidewalk from which the puff or flash came that caused his injuries; that the water from the hose line that he was straddling was being directed alternately into the hole in the sidewalk and into the lobby and drug store in the building; that appellee was not on the hose at all times; and that the appellee was fighting the fire near the place where he was injured for a period of not less than thirty minutes prior to the accident. The evidence showed that there were numerous firemen fighting the fire in close proximity to the building, at least one was on the annex to the Liberty building, and there were three others at the same place as the appellee. There is no evidence in the record that during such period that any of the explosions or puffs (testified to by some of the witnesses) blew the flames to the point where the appellee was standing at the time he was hurt.

The jury found that appellee voluntarily placed himself in a perilous position at the time and place in question, but that such act was not negligence.

The facts in this case are very similar to the facts in the case of Houston Belt & Terminal Ry. Co. v. O'Leary, Tex.Civ.App., 136 S.W. 601, which was a suit by the widow and daughter of O'Leary against the Railway Company because of the death of O'Leary, a fireman in the employ of the fire department of the city of Houston, as a result of an explosion occurring at a fire in a box car of inflammable and explosive material on the premises of the Railway Company; in which case the court held that the evidence presented a question of fact to be determined by the jury as to the contributory negligence and assumption of risk of O'Leary.

In the case at bar appellee testified that after he arrived at the fire there was only one explosion, and that was the one which

injured him. There is testimony that appellee, with others, had been fighting the fire for a period of not less than thirty minutes prior to his injuries; had obeyed all warnings and instructions given to him relative to his safety; and was not alone at the place of the accident; three other firemen were with him at the time, all acting in line of duty.

In the case of Smith v. Twin State Gas & Electric Co., 83 N.H. 439, 144 A. 57, 59, 783, 61 A.L.R. 1015, where a fireman was killed as the result of a gas explosion which occurred while he was searching for gas leaks with a match, the question was raised as to his contributory negligence, and the court said: "Considering the fact that he was acting in the course of his public service, what he did was inconclusive in showing negligence and might be found consonant with ordinary care."

■ We think the evidence in this case presented a question of fact to be determined by the jury as to the contributory negligence or incurred risk of appellee, and that this case is controlled by the rule of law announced in the cases of Houston Belt & Terminal Co. v. O'Leary, Tex.Civ.App., 136 S.W. 601; Houston Belt & Terminal Co. v. Johansen, 107 Tex. 336, 179 S.W. 853; and McAfee v. Travis Gas Corporation, Tex.Sup., 153 S.W.2d 442.

■■ Appellant maintains that its failure to cut off the gas flowing into the Liberty building within a reasonable time could not have been the proximate cause or the sole proximate cause of the damage to the appellee, for the reasons: first, that such damage, or some similar damage, could not have been reasonably anticipated and foreseen as the natural and probable consequences of such failure; and, second, that such failure did nothing more than create the condition or give rise to the occasion that resulted in the damage to the appellee. The evidence in this case is ample and sufficient to sustain the finding of negligence and proximate cause against the appellant in failing to cut off the gas flowing into the Liberty building within a reasonable time after learning of the fire and explosion. When the appellant, through its superintendent Burke, and employee Fulton, discovered the fire, explosion, and escaping gas, it then became its duty to exercise ordinary care to cut off the gas; and we think that such damage as suffered by the appellee, or some similar damage, could have

been reasonably anticipated and foreseen as the natural and probable consequences of such failure. Texas-Louisiana Power Co. v. Webster, 127 Tex. 126, 91 S.W.2d 302; McAfee v. Travis Gas Corporation, Tex. Sup., 153 S.W.2d 442, 444; Texas Public Service Co. v. Armstrong, Tex.Civ.App., 37 S.W.2d 294.

■ Appellant's complaints to the court's definition of "negligence" and "proximate cause" are overruled. The definition of negligence was approved in City of Waco v. Diamond, Tex.Com.App., 65 S.W.2d 272; and the definition of proximate cause was correct under Browning v. Graves, Tex. Civ.App., 152 S.W.2d 515, writ denied.

Appellant complains of the court's definition of "new and independent cause," first, for the reason that it does not embrace omissions; second, because it requires a new and independent force or act to be sufficient in and of itself to stand as a proximate cause of the injuries complained of; third, because it excludes from the jury's consideration any act on the part of the appellee as a new and independent cause; and, fourth, that said definition requires that a separate and independent agency must be the sole cause of the injuries. The definitions objected to are as follows:

"By the term 'new and independent cause' as used herein is meant some new and independent force and act which intervenes between the negligence, if any, of the defendant and the injuries complained of by plaintiff, and which new and independent force or act breaks the chain of causation between the negligence, if any, of the defendant and the injuries complained of by the plaintiff, and which new and independent force or act is sufficient in and of itself to stand as a proximate cause of the injuries complained of by the plaintiff, and which new and independent cause would not have been foreseen by a reasonably prudent person under the attending circumstances.

"The act or omission of a separate or independent agency which concurs with the negligent act or omission of the defendant and thereby aids in bringing about the injury complained of by the plaintiff, so that without such aid the injury complained of by the plaintiff would not have occurred, may be a new and independent cause provided that such concurring cause, so aided, in order to be a new and independent cause, must be such that a person of ordinary care

and prudence would not have reasonably anticipated and foreseen the same in the light of the attending circumstances.

"By the term 'new and independent force' as used herein is meant an event disconnected from the original force, operating in itself, that produces a certain result and breaks the chain of sequence, and which in itself must be sufficient to stand as the cause of the loss, and but for which the loss, if any, would not have occurred, and which new and independent force would not have been foreseen by a reasonably prudent person under the attending circumstances."

We do not believe that the definition is subject to the first objection, as the use of the words "independent force and act" in said definition does not exclude an omission, as such term is broad enough to include an omission, especially when taken in connection with the court's definition of "new and independent force," in which it is stated that by the same is meant an event, and we are of the opinion that the word "event" is broad enough to include an omission. In this connection, it is evident that the members of the jury were not misled by the failure to include in said definition the word "omission," because, by their answer to special issue No. 48, they found that an omission, to-wit, "the failure, if any, on the part of the Texas Cities Gas Company to use ordinary care in inspecting said intermediate pressure line * * *" was a new and independent cause. The second objection is without merit in that the requirement that independent force or act to be sufficient in and of itself to stand as a proximate cause of the injuries complained of is correct. 45 C.J. p. 930; Louisiana Mutual Ins. Co. v. Tweed, 7 Wall. 44, 19 L.Ed. 65; Atchison, T. & S. F. Ry. Co. v. Samuel Calhoun, 213 U.S. 1, 29 S.Ct. 321, 53 L.Ed. 671, 674; Shippers' Compress & Warehouse Co. v. Davidson, 35 Tex.Civ. App. 558, 80 S.W. 1032; Magnolia Petroleum Co. v. Cocke, Tex.Civ.App., 3 S.W.2d 139; Paris & G. N. R. Co. v. Stafford, Tex. Com.App., 53 S.W.2d 1019; Commercial Standard Ins. Co. v. Shudde, Tex.Civ.App., 76 S.W.2d 561; Abercrombie Co. v. Delcomyn, 134 Tex. 490, 135 S.W.2d 978; Burlington-R. I. Ry. Co. v. Davis, Tex. Civ.App., 123 S.W.2d 1002. The third objection is not tenable, as any correct definition of "new and independent cause" will exclude the idea that the negligent act of either of the parties will constitute such cause. Lowrimore v. Sanders, 129 Tex. 563, 103 S.W.2d 739, 106 S.W.2d 266; Young v. Massey, 128 Tex. 638, 101 S.W. 2d 809; Abercrombie Co. v. Delcomyn, 134 Tex. 490, 135 S.W.2d 978. The definition is not subject to the fourth objection, as the definition did not instruct the jury that the "new and independent force" must be the sole cause of the injury, but only that it must be sufficient of itself to stand as a proximate cause of the injury. Burlington-R. I. Ry. Co. v. Davis, Tex.Civ.App., 123 S.W.2d 1002.

The appellant contends that since the jury found in response to special issues submitted that the appellant failed to cut off the gas within a reasonable time, and that such failure was negligence, and that said negligence was a proximate cause and the sole proximate cause of the injuries sustained by the appellee, and since the jury further found in response to special issues submitted that the appellant failed to use ordinary care in inspecting the intermediate pressure gas line and that said failure was negligence and that said failure was a new and independent cause between the negligence on the part of the Bank and the Land Trust and the injuries sustained by appellee, the same are conflicting findings on the issues involved, and since the findings with respect to the failure to cut off the gas are the only findings which support the judgment entered in this cause, the trial court erred in entering the judgment against the appellant.

We are of the opinion that the omission of the appellant, found by the jury to be a new and independent cause in their answer to special issue No. 48, was not a new and independent cause for the following reasons: (1) That under the definition of "new and independent cause," as given by the court, the new and independent cause must intervene between the negligence of the defendants (Bank and Land Trust). Since the jury found that there was no negligence on the part of the Bank and Land Trust, such omission could not have been a new and independent cause. (2) The appellee sued all defendants as joint tort-feasors and alleged various and sundry acts of negligence and proximate cause against each of the defendants, and evidence was introduced to support such allegations. The appellant maintains that the omissions of a party to the suit, charged with negligence, are those of an independent agency. We are of the opinion that the

acts or omissions of either party to a personal injury suit cannot be a new and independent cause. Such new and independent cause must be ascribed to some outside agency operating to cause the injury. Magnolia Petroleum Co. v. Owen, Tex.Civ. App., 101 S.W.2d 354; Dallas Ry. & Terminal Co. v. Little, Tex.Civ.App., 109 S.W. 2d 289; Johnson v. Smither, Tex.Civ.App., 116 S.W.2d 812; Goldstein Hat Mfg. Co. v. Cowen, Tex.Civ.App., 136 S.W.2d 867.

■ We are also of the opinion that there is no conflict in the findings of the jury, in that the jury, by its answer to special issue No. 21, found that the negligence of the appellant in failing to use ordinary care in inspecting said intermediate pressure line was not the proximate cause of the injuries to the plaintiff, and since the jury made such finding, there was left only one proximate cause, to-wit: failure on the part of appellant to cut off the gas within a reasonable time, as found by the jury in answer to special issue No. 25, and the same could be the sole proximate cause, as found by the jury in answer to special issue No. 39, as there was only one proximate cause found by the jury.

■ If we are mistaken in the views expressed above, then we are of the opinion that in view of the fact that the appellant would not have been entitled to a judgment on any of the findings of the jury, the trial court had a right to reconcile the inconsistencies, if any, in the findings of the jury. Perez v. Houston & T. C. Ry. Co., Tex.Civ.App., 5 S.W.2d 782; Howard v. Howard, Tex.Civ.App., 102 S.W.2d 473.

We have considered the other assignments of error of appellant, in which it asserts that there are other conflicts in the findings of the jury, and we do not agree with appellant that there are any irreconcilable conflicts.

■ The appellant contends that the court should have sustained its objections to special issue No. 3, to the effect that the court assumed in the issue that appellant discovered and could have discovered that gas was escaping in time to have prevented the injuries to appellee; that the issue, as framed, imposed upon appellant the absolute duty to cut off the gas; and that said issue was duplicitous, in that it asked two or more questions in one, in that it asked the jury if appellant failed to cut off the gas, and if it failed to cut off the gas within a reasonable time, and if it failed to prevent gas from flowing into said building. Said issue is as follows: "Do you find from a preponderance of the evidence, if any, that the defendant, Texas Cities Gas Company, after learning of the fire and explosion in the Liberty building, failed to cut off the gas within a reasonable time to prevent it from flowing into said building and annex?"

The evidence is undisputed that the appellant's superintendent, Mr. Burke, and Mr. Fulton, knew of the fire and explosion and went to the scene of the fire, after obtaining such knowledge, for the sole and only purpose of cutting off the gas and preventing it escaping into the building. The uncontradicted evidence in this case was to the effect that the intermediate pressure line parted with the Hammond coupler, and that such parting released a tremendous amount of gas into the Liberty building and basement. In view of the fact that the evidence was uncontradicted and undisputed on the points heretofore mentioned, we are of the opinion that it would have been illogical to have had the jury to pass upon a fact or facts about which there was no dispute. The sole question in this issue, as we see it, to be passed upon by the jury, was whether or not the gas was cut off by appellant within a reasonable time; and under the rules announced in the cases of Marek v. Southern Enterprises, Inc., of Texas, 128 Tex. 377, 99 S.W.2d 594; Dulaney Investment Co. v. Wood, Tex.Civ. App., 142 S.W.2d 379; City of Winters v. Bethune, Tex.Civ.App., 111 S.W.2d 797; and City of Abilene v. Moore, Tex.Civ. App., 12 S.W.2d 604, we are of the opinion that the issue was not subject to the objections made by appellant.

■ Appellant contends that an award for physical pain, past and future, necessarily embraces an award for lost time and diminished capacity to labor, and an award for lost time and diminished capacity to labor necessarily embraces an award for physical pain and suffering, and that pain, either mental or physical or both, is the element that produces diminished earning capacity and consequently where an award is made by the jury which necessarily embraces both pain and suffering and also diminished earning capacity, which essentially results from pain and suffering, such an award of such damages permits a double recovery. We do not believe that there is any merit in the contention of appellant.

The court submitted the matter in issue to the jury in this manner: "What amount of money, if any, if paid now in cash, if any, do you find from a preponderance of the evidence, if any, would reasonably compensate the plaintiff, N. P. Dickens, for his injuries, if any?"

In connection with that issue the court instructed the jury as follows: "In connection with special issue No. 38B you may take into consideration only the following, to-wit: the present reasonable cash value, if any, of such physical and mental pain, if any, that you may believe from a preponderance of the evidence, if any, that the plaintiff has undergone in the past or may undergo in the future; the present reasonable cash value, if any, of the loss of time, if any, that you may believe from a preponderance of the evidence, if any, that the plaintiff has sustained to this date, if he has sustained any; the present reasonable cash value, if any, of the diminished ability, if any, to labor in the future that you may believe from a preponderance of the evidence, if any, that the plaintiff has sustained, if he has sustained any."

It would unduly extend this opinion to discuss this question in detail, but we overrule appellant's contention on the following authorities: Willis v. Smith, Tex.Civ. App., 120 S.W.2d 899; Gulf, C. & S. F. Ry. Co. v. Brown, 16 Tex.Civ.App. 93, 40 S.W. 608, writ refused; 13 Tex.Jur., sec. 260, p. 444.

■ The appellant contends that the appellee sought damages from the appellant for time lost between the date of his injuries on October 4, 1936, and the date of the trial on March 1, 1940, and also sought damages for time lost and for diminished capacity to labor and earn money from the date of the trial into the future; and since the city of Waco, the employer of appellee, as part of his contract of employment, and not as a gratuity, had paid to him the sum of $70 per month since May 1, 1938, and further obligated itself by ordinance to continue said payment of $70 per month to appellee as long as his disability continued, the trial court erred in excluding from the consideration of the jury said facts, for the reason that the payments were admissible in evidence on the issue of whether the damage to be assessed for lost time should be reduced or mitigated.

The testimony in the record showed that appellee was disabled during the period of time that such pension payments were made to him and would be totally disabled in the future. The charter of the city of Waco and an ordinance of the city of Waco authorized payments of a pension during the period of disability.

In the case of Rusk v. Jeffries, 110 N.J.L. 307, 164 A. 313, which was a suit by a policeman to recover for injuries which disabled him from performing in the future his duties as a policeman, the defendant sought to introduce evidence of such pension payments by the city who employed the policeman. Such evidence was excluded and the court stated: "Generally, pension to disabled employee, whether paid pursuant to contract or as gratuity, does not reduce damages recoverable against tort-feasor causing disability."

In the case of Campbell v. Sutliff, 193 Wis. 370, 214 N.W. 374, 376, 53 A.L.R. 771, the court stated: "We see no reason why one whose acts have caused injury to another should reap the entire benefit that comes from the payment of wages made by an employer, either as a gratuity to a faithful employee or because such payments are required by contract."

We do not think the court erred in excluding evidence of the payment of pension. See authorities cited above and St. Louis & S. F. Ry. Co. v. Clifford, Tex.Civ. App., 148 S.W. 1163.

■ The jury found, in response to special issue No. 22, that Warren Moore, an employee of the Bank and the Land Trust, manipulated a light switch in the boiler-room immediately prior to the explosion and fire in question; and in response to special issue No. 23 the jury found that at the time the said Warren Moore manipulated the light switch he knew that escaping gas was present in the boiler-room. In response to special issue No. 25 the jury found that it was not negligence on the part of Warren Moore to manipulate the light switch at a time when he knew of the presence of gas in the boiler-room. The appellant contends that the act of Warren Moore in manipulating the light switch in the boiler-room of the Liberty building when he knew that escaping gas was present in said boiler-room was negligence, and a proximate cause of the injury, as a matter of law. We are of the opinion that the question of negligence and the question of proximate cause were questions of fact for the jury.

Galveston Electric Co. v. Hansen, Tex.Com. App., 15 S.W.2d 1022.

All of appellant's assignments of error have been carefully considered and present no error.

The judgment of the trial court is affirmed.

HALE, J., took no part in the consideration and disposition of this case.